# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**ELDIE L. CRUZ, M.D.,**

      Plaintiff,

v.                                                     **No: 1:18-cv-974-RB-SCY**

**LOVELACE HEALTH SYSTEM, INC.,**
**LOVELACE HEALTH SYSTEM, INC. dba LOVELACE MEDICAL GROUP,**
**LOVELACE HEALTH SYSTEM,**
**LOVELACE MEDICAL GROUP,**
**AHS MANAGEMENT COMPANY, INC.,**
**AHS MANAGEMENT COMPANY, INC. dba ARDENT HEALTH SERVICES,**
**AHS NEW MEXICO HOLDINGS, INC.,**
**AHS ALBUQUERQUE HOLDINGS, LLC,**
**BHC MANAGEMENT SERVICES OF NEW MEXICO, LLC,**
**ARDENT HEALTH SERVICES, INC.,**
**ARDENT HEALTH SERVICES, LLC,**
**ARDENT HEALTH SERVICES, and**
**RELIANCE STANDARD LIFE INSURANCE COMPANY,**

      Defendants.

## MEMORANDUM OPINION AND ORDER

      Dr. Eldie Cruz (Plaintiff) was employed as a general surgeon. Following a leave of absence from the hospital where he worked, Plaintiff filed for long-term disability (LTD) benefits under his employer-sponsored health insurance plan and was denied. He was eventually fired and lost his medical privileges and alleges that he never received any of the LTD benefits he believes he was entitled to under the plan. Plaintiff now brings suit against 13 named defendants, most of which are somehow connected to his employer through a web of business names and chains of corporate ownership. As a result, various defendants have filed four separate motions to dismiss and numerous other notices of joinder adopting by reference the other defendants' motions. The Court will rule on the motions to dismiss in a separate opinion. Before it can assess the sufficiency

of the pleadings, however, the Court must sort out the identities of the various defendants and determine the reach of the Court's personal jurisdiction.

This Memorandum Opinion and Order takes up three motions that will clarify the procedural posture of this case: (i) AHS Medical Holdings, LLC's Motion to Dismiss Claims Against Non-Entity "Ardent Health Services" (Doc. 15); (ii) Lovelace Health System, Inc.'s Notice of Joinder in Motions to Dismiss adopting the same arguments regarding alleged non-entities "Lovelace Medical Group" and "Lovelace Health System" (Doc. 22); and (iii) AHS Medical Holdings, LLC's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 17).

## I. Background

### A. The Parties

As the identity of several of the named defendants is confusing but critical to the Court's rulings on these various motions, a brief overview of the parties is necessary. Plaintiff is a general surgeon who was employed by "Lovelace." (Doc. 71 (Am. Compl.) ¶¶ 1, 22.) Plaintiff refers to 10 of the 13 named defendants collectively as "Lovelace" or "the Lovelace Defendants." (*Id.* ¶ 15.) The so-called "Lovelace Defendants" include:

1. Lovelace Health System, Inc.
2. Lovelace Health System
3. Lovelace Medical Group
4. AHS Management Company, Inc.
5. Ardent Health Services
6. AHS New Mexico Holdings, Inc.
7. AHS Albuquerque Holdings, LLC
8. BHC Management Services of New Mexico, LLC

2

9. Ardent Health Services, Inc.

10. Ardent Health Services, LLC

(*Id.*)[1] The only defendant that Plaintiff clearly does not consider to be part of "Lovelace" is Reliance Standard Life Insurance Company (Reliance). (*See id.* ¶¶ 15, 17.)

### B. Relevant Facts[2]

"Lovelace" was the sponsor and plan administrator of a long term disability plan (LTD Plan) that it offered to its employees. (*Id.* ¶ 23.) Plaintiff participated in the LTD Plan. (*Id.* ¶ 26.) Reliance was the Plan's "claims administrator." (*Id.* ¶ 25.) "On March 1, 2016[,] Plaintiff made a claim for [LTD benefits] under the LTD Plan[,]" which Reliance denied. (*Id.* ¶¶ 28, 30.) Reliance did determine, however, "that Plaintiff was entitled to three months of LTD benefits to be paid by Lovelace . . . ." (*Id.* ¶ 34.) Lovelace did not pay any LTD Benefits to Plaintiff. (*Id.*) Plaintiff did receive "limited short term disability payments in early 2016, but all payments and employment compensation stopped in March 2016 when Lovelace unilaterally put Plaintiff on unpaid leave." (*Id.* ¶ 36.) Also "[b]eginning in early 2016, Plaintiff and his treating physicians repeatedly asked for reasonable accommodation from Lovelace under the ADA to allow Plaintiff to continue to work as a physician and support his family[,]" but Lovelace did not provide the requested

---

[1] Though listed as individual defendants in the case caption, Plaintiff does not state that "Lovelace Health System, Inc. dba Lovelace Medical Group" or "AHS Management Company, Inc. dba Ardent Health Services" are considered part of "Lovelace," although both are listed as unique defendants in the caption and appear to be a combinations of one named "Lovelace Defendant" doing business as another. (*See id.* ¶ 15.)

[2] The facts in this section are taken from Plaintiff's Amended Complaint (Doc. 71 (Am. Compl.)), and all well-pleaded factual allegations are presented in this section as true and construed in the light most favorable to Plaintiff. *See In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1108 (10th Cir. 2015). The Amended Complaint simply redacts certain personal information from the original complaint in lieu of sealing the entire complaint, per the Court's order following a January 15, 2019 hearing on Plaintiff's motion to seal the complaint. (*See* Doc. 68.) The Court recites only the facts and procedural background necessary to resolve these motions.

accommodation. (*Id.* ¶¶ 38–39.) Finally, on February 27, 2018, "Lovelace notified Plaintiff that his medical privileges with Lovelace were being terminated . . . ." (*Id.* ¶ 41.)

**II.      Motion to Dismiss Claims Against "Ardent Health Services"**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), AHS Medical Holdings, LLC f/k/a Ardent Health Services, LLC has moved to dismiss all claims against named defendant "Ardent Health Services," asserting that Ardent Health Services is a federally registered service mark and thus "is not a legal entity capable of being sued." (Doc. 15 at 1.)

### A. Movant AHS Medical Holdings, LLC may participate in this lawsuit because it was formerly known as named Defendant Ardent Health Services, LLC.

As a threshold matter, while the movant's name is quite similar to that of many of the defendants, AHS Medical Holdings, LLC is not actually a named defendant in this case. The "fka" designation that it employs, however, suggests that "AHS Medical Holdings, LLC" is the current name of "Ardent Health Services, LLC," which *is* a named defendant. (*See id.*) Still, Plaintiff asserts that AHS Medical Holdings, LLC does not have standing in this case without evidence of a connection to a named defendant. (Doc. 40 at 2–3.) According to Plaintiff, "Movant could have presented documentation proving the alleged relationship between AHS Medical Holdings, LLC and Ardent Health Services, LLC, but did not." (Doc. 42 at 3 n.1.) While some sort of official documentation evidencing the name change would indeed have helped the Court sort through this dispute more efficiently, Plaintiff is simply not correct that there is "[n]o evidence of the relationship between the entity sued by Plaintiff in this lawsuit, Ardent Health Services, LLC and the entity that filed the motion, AHS Medical Holdings, LLC . . . ." (Doc. 40 at 2–3.)

First, AHS Medical Holdings, LLC has filed a sworn declaration by Stephen Petrovich, the Executive Vice President and General Counsel of AHS Management Company, Inc. (a currently named defendant), in which he explains that until 2015 his company was a corporate subsidiary of

4

the movant, AHS Medical Holdings, LLC, *which was formerly known as* Ardent Health Services, LLC. (Doc. 17-1 ¶ 2.) Plaintiff urges the Court not to "simply accept as true whatever representations [AHS Medical Holdings, LLC] makes regarding the identity of defendants in this case . . . ." (Doc. 42 at 3.) But Plaintiff does not offer any argument as to why it thinks this sworn declaration should not be credited nor any argument that it actually believes Ardent Health Services, LLC continues to operate as its own entity and not as AHS Medical Holdings, LLC.

Further, Plaintiff's own exhibits filed in response to AHS Medical Holdings, LLC's motion to dismiss for lack of personal jurisdiction appear to corroborate Mr. Petrovich's declaration. (*See* Doc. 43 at 54 ("AHS Medical Holdings LLC, doing business as Ardent Health Services LLC, through its subsidiaries, owns and operates a network of health systems . . . . AHS Medical Holdings LLC was formerly known as Ardent Health Services LLC.") The Court concludes that there is sufficient evidence in the record in the form of sworn statements and publicly available documents to show that AHS Medical Holdings, LLC was formerly known as Ardent Health Services, LLC (and, as Plaintiff's exhibit suggests, may even continue to do business as Ardent Health Services, LLC). Thus, AHS Medical Holdings, LLC f/k/a Ardent Health Services, LLC may participate in this lawsuit.

### B. "Ardent Health Services" is a non-entity service mark name under which Defendant AHS Management Company, Inc. does business.

With the movant's identity resolved, the Court will next address the substance of the motion, and for ease of reference will refer to AHS Medical Holdings, LLC f/k/a Ardent Health Services, LLC as "AHS" in the remainder of this opinion. AHS urges the Court, pursuant to Federal Rule of Evidence 201, to take judicial notice of the fact that "'Ardent Health Services' is not a corporation or other legal entity[,]" but rather "a federally registered service mark with unique serial and registration numbers . . . ." (Doc. 15 at 2.) As evidence, AHS attaches two documents it

states are derived from searching the United States Patent and Trademark Office (USPTO), Trademark Electronic Search System. (*Id.* at 3; *see also* Docs. 20-1; 20-2.) Both printouts list "Ardent Health Services" as a "word mark" last owned by AHS Management Company, Inc. (*See* Docs. 20-1 at 1; 20-2 at 1.)

Plaintiff argues in response that the documents are not authenticated, that AHS does not have standing to bring this motion, and that case law does not support taking judicial notice of the exhibits. (*See* Doc. 40 at 3–7.) First, Plaintiff asserts that the exhibits are "not authenticated, contain no certification of any sort, [and] are undated . . . ." (*Id.* at 3.) They do, however, show the logo and title of the USPTO website and list a date on which the website was last updated. (*See* Docs. 20-1; 20-2.) More to the point, Plaintiff does not actually argue that the printouts are not authentic or that they are incorrect in any way, and the Court itself was able to access the official USPTO website, conduct the same search, and view the same information. Thus, the materials sought to be judicially noticed "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201(b)(2.)

Next, the Court has already determined and explained above that AHS Medical Holdings, LLC f/k/a Ardent Health Services, LLC may participate in this lawsuit since its former entity name, Ardent Health Services, LLC, is a named defendant. However, Plaintiff goes on to argue that AHS has no standing to bring this motion because its *subsidiary*, AHS Management Company, Inc., is the entity that actually owns the service mark. (Doc. 40 at 3–4 ("the purported owner(s) of the purported word mark Ardent Health Services is not the entity that filed the Motion to Dismiss.").) This argument is unavailing, as the entity that owns the service mark, AHS Management Company, Inc., is a defendant in this case and is a subsidiary of AHS. (*See* Doc. 17-1 ¶ 5.)[3] It perhaps would

---

[3] The Court credits Mr. Petrovich's sworn declaration to the extent it explains this relationship, and Plaintiff has not meaningfully disputed it. (*See* Doc. 42.)

6

have been cleaner (and avoided this dispute entirely) if the entity that actually owns the service mark directly—AHS Management Company, Inc.—had filed this motion, particularly as counsel for AHS Medical Holdings, LLC and AHS Management Company, Inc. is the same and presumably could have filed this motion on behalf of either client. (*See* Doc. 15 at 7.) Still, the Court sees no reason why a parent or holding company that is a co-defendant in this action (under its former name), cannot move to dismiss claims against a non-entity service mark owned by its subsidiary.

Finally, the cases Plaintiff cites to argue that "judicial notice is not appropriate with respect to the documents" attached to the motion are inapposite. (*See, e.g.*, Doc. 40 at 6–8 (citing *Navajo Nation v. Urban Outfitters, Inc.*, 935 F. Supp. 2d 1147, 1157–58 (D.N.M. 2013) (declining, in a trademark dispute, to consider "cherry-picked portions of the USPTO's records" that the defendants had attached to their motion to dismiss "to contest the merits of Plaintiffs' case or support their own defenses"); *Video Gaming Techs., Inc. v. Castle Hill Studios LLC*, No. 17-CV-454-GKF-JFJ, 2018 WL 284991, at *3 (N.D. Okla. Jan. 3, 2018) (finding it improper to take judicial notice of USPTO documents when the defendant was introducing them in a motion to dismiss "to demonstrate that [plaintiff's] trademarks and themes are ubiquitous in the industry such that there is no likelihood of confusion.")).) These and other examples Plaintiff cites are scenarios in which such documents were introduced to bear on the merits of the underlying claims in order to support Rule 12(b)(6) motions. That is simply not the case here, where AHS is introducing the documents to show that a named defendant is not a legal entity capable of being sued. Plaintiff's response completely fails to address AHS's copious citations to cases in which courts have taken judicial notice of the exact same type of documents for the exact same purpose. (*See* Docs. 15 at 3–6; 42.)

Thus, pursuant to Federal Rule of Evidence 201, the Court will take judicial notice of AHS's proffered exhibits and conclude that "Ardent Health Services" is a service mark owned by AHS Management Company, Inc. (*See* Docs. 20-1; 20-2.) "Ardent Health Services" alone is thus incapable of being sued. *See Schueller v. Farmers Ins. Grp.*, No. 1:07-CV-1084 MCA/RLP, 2008 WL 11451265, at *4 (D.N.M. Sept. 26, 2008) ("a corporation operating under an assumed name does not create a separate legal entity. It is merely descriptive of a person or company that does business under some other name.") The Court will grant AHS's motion and dismiss any claims against "Ardent Health Services" as an individual defendant, noting that this does not affect Plaintiff's claims against Defendants AHS Management Company, Inc. and AHS Management Company, Inc. dba Ardent Health Services.

### III. Motion to Dismiss Claims Against "Lovelace Medical Group" and "Lovelace Health System

In its first Notice of Joinder in Motions to Dismiss (Doc. 22), Lovelace Health System, Inc. ("Lovelace") states that it "fully adopts and incorporates herein . . . [a]s to named defendants 'Lovelace Medical Group' and 'Lovelace Health System,' the arguments supporting dismissal of such non-entity defendants set forth in" AHS's motion to dismiss claims against "Ardent Health Services." (*See id.* ¶ 4 (adopting Doc. 15).) Under the local rules of this District, "[a] party may adopt by reference another party's motion or other paper by making specific reference to the filing date and docket number of such motion or other paper." *See* D.N.M.LR-Civ 7.1(a). Though the Court finds generally that the defendants in this case have made excessive and unnecessary use of this rule, Lovelace has properly utilized it in this case to promote judicial economy and efficiency by adopting AHS's motion rather than filing its own duplicative one. The notice of joinder was filed, however, one day after Lovelace's deadline for filing responsive pleadings. (*See* Doc. 9.) Local Rule 7.1(a) does not explicitly state that adoptions by reference must be done within a certain

time frame, but the Court considers it a matter of common sense and common fairness to construe the rule to prevent parties from simply "adopting" other parties' motions and arguments when they would be time-barred from bringing a similar motion on their own.

In this case, however, the Court finds Plaintiff is not prejudiced by the single day delay, particularly as he was already aware of the argument because Lovelace noted in its timely filed motion to dismiss that "[w]hile the Complaint also lists as defendants both 'Lovelace Medical Group' and 'Lovelace Health System,' those are merely business names under which Lovelace Health System, Inc. conducts business operations and are not separate entities." (Doc. 13 at 1 n.1.) Plaintiff has also adopted by reference its response to AHS on this issue as a response to Lovelace. (*See* Doc. 40 at 2 n.1.) As such, the Court will proceed to rule on whether Defendants "Lovelace Medical Group" and "Lovelace Health System" are entities capable of being sued based on the arguments laid out in AHS's similar motion. (*See* Doc. 15.)

As the preceding section makes clear, however, the Court's decision to grant AHS's motion to dismiss claims against Ardent Health Services was based on its decision to take judicial notice of two documents from the USPTO's online database that reveal "Ardent Health Services" is a registered service mark, not an entity capable of being sued. (*See* supra at 5–8.) The Court held that the printouts AHS attached to its motion were sufficient for purposes of judicial notice and was also able to independently utilize the online database to confirm the information. In this case, Lovelace has not provided the Court with any records indicating the non-entity status of Lovelace Medical Group or Lovelace Health System such that the Court could conduct the same analysis and determine if judicial notice is appropriate. The Court even attempted to determine if similar information was available in the online USPTO database regarding "Lovelace Medical Group" and "Lovelace Health System" in the hope that this issue could be resolved efficiently, but the

9

search was unsuccessful. Thus, the Court will deny the relief requested in Lovelace Health System, Inc.'s Notice of Joinder in Motions to Dismiss to the extent it argues for dismissal of claims against "Lovelace Medical Group" and "Lovelace Health System." (Doc. 22 ¶ 4.)

## IV. AHS Medical Holdings, LLC's Motion to Dismiss for Lack for Personal Jurisdiction

### A. Background

Pursuant to Federal Rule of Civil Procedure 12(b)(2), AHS Medical Holdings, LLC f/k/a Ardent Health Services, LLC (AHS) urges the Court to dismiss Plaintiff's claims against it for lack of subject matter jurisdiction. It asserts that AHS "was a holding company whose affiliates and subsidiaries[,]" including many of the named defendants in this case, "operated acute hospitals and other health care facilities." (Doc. 17-1 ¶ 4.) And, according to AHS, its "only relevant connection to New Mexico was its ownership interest in AHS New Mexico Holdings, Inc. and AHS Management Company, Inc. until August 4, 2015[,]" and that "those entities are active companies and have maintained their separate recognized corporate form . . . ." (Doc. 17 at 2.)

In support, AHS again relies on the sworn declaration of Stephen Petrovich, the Executive Vice President and General Counsel of Defendant AHS Management Company, Inc. (Doc. 17-1.) Mr. Petrovich's statement outlines the various relationships between several of the named defendants, all of which he asserts are subsidiaries of AHS Medical Holdings, LLC. (*Id.* ¶¶ 4–5.) Relevant to this motion, Mr. Petrovich asserts that Lovelace Health System, Inc. (the entity that actually employed Plaintiff), was a subsidiary of AHS New Mexico Holdings, Inc., which itself was a subsidiary of AHS Medical Holdings, LLC. (*Id.* ¶ 4.) Another subsidiary and defendant, AHS Management Company, Inc. "is the sponsor of the long-term disability benefits plan described in Plaintiff's complaint." (*Id.* ¶ 5.) The relationships described in Mr. Petrovich's sworn statement may be best summarized as a diagram:



AHS apparently does not deny that at least some of its subsidiaries may be subject to the Court's personal jurisdiction through their contacts with New Mexico and relationships with Plaintiff. Still, it argues that it "maintained separate corporate books and files separate tax returns from those of Lovelace Health System, Inc. and AHS Management Company, Inc." (*Id.* ¶ 8.) Mr. Petrovich further states that AHS does not operate or have a presence in New Mexico, has had no direct contacts with the state of New Mexico, and had no "active or passive participation in decisions regarding Plaintiff's employment or the benefits plan" at the heart of this litigation. (*Id.* ¶¶ 9–16.)

In response, Plaintiff argues that "[t]he AHS / Ardent entities hold themselves out to the world claiming to operate health care systems, employ physicians, and provide patient care." (Doc. 42 at 6.) Plaintiff attaches nearly 200 of pages of documents[4] "produced by internet research from

---

[4] The Court will grant Plaintiff's Motion to Exceed Page Limits (Doc. 36) but cautions Plaintiff that, in the future, the large number of parties in this case is not a valid excuse for his failure to seek consent before filing exhibits of excess length (*see id.* at 2); *see also* D.N.M. LR-Civ. 10.5, nor is "bec[oming] aware of the rule" after it is too late to seek timely consent. (*See* Doc. 67 at 4.)

various publicly accessible websites" that he argues prove that the entities "share many officers and key executives who apparently provide the same function for many if not all of the AHS / Ardent entities, including those operating in New Mexico that employed Dr. Cruz." (*Id.* at 6, 7 n.2.) The documents appear to show that various executives are employed by both Lovelace Health System, Inc., AHS Management Company, Inc. dba Ardent Health Services, and AHS Medical Holdings, LLC, in various combinations. (*Id.* at 6–10.) Plaintiff also includes excerpts from the "Ardent Health Services" website that: discuss a code of conduct that is applicable to all affiliated facilities (Doc. 43 at 63); include the Lovelace Health System logo (*id.* at 58); and mention its investments in New Mexico and Lovelace (*id.* at 94–98). Plaintiff also attaches printouts of job postings in Albuquerque from the website Linkedin showing "Ardent Health Services" as the employer. (*Id.* at 99–171.)

### B. Relevant Law

#### i. Law Regarding Personal Jurisdiction

"The Fourteenth Amendment's Due Process Clause requires that a defendant be subject to a court's personal jurisdiction before a judgment can be rendered against it." *Manning v. Portland Orthopaedics Ltd.*, No. CIV 17-1252 RB/GBW, 2018 WL 5892666, at *2 (D.N.M. Nov. 9, 2018) (quoting *Davis v. USA Nutra Labs*, No. CV 15-01107 MV/SCY, 2016 WL 9774945, at *3 (D.N.M. Dec. 21, 2016) (citing *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 301 (1980))). "To establish personal jurisdiction over the [non-resident] defendants," a plaintiff must show "first, that jurisdiction is authorized under [New Mexico] law and, second, that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1100 (10th Cir. 2009) (citation omitted.)

"In New Mexico, a federal court has personal jurisdiction over a nonresident defendant only to the extent that the state's long-arm statute permits." *Manning*, 2018 WL 5892666, at *3 (quoting *Davis*, 2016 WL 9774945, at *3). And, per New Mexico's long-arm statute, jurisdiction is authorized to the extent it is consistent with the Due Process Clause. *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006). "To satisfy Due Process requirements, the defendant must have (1) sufficient minimum contacts with the forum state (2) such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *McManemy v. Roman Catholic Church of Diocese of Worcester*, 2 F. Supp. 3d 1188, 1198 (D.N.M. 2013) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945))."A plaintiff satisfies the 'minimum contacts' standard by showing that the court may exercise either general or specific jurisdiction over the defendant." *Manning*, 2018 WL 5892666, at *3 (quoting *McManemy*, 2 F. Supp. 3d at 1199).

General Jurisdiction

General jurisdiction is appropriate "when the plaintiff demonstrates that the defendant's general business contacts with the forum state 'are so continuous and systematic as to render them essentially at home' there." *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Even if the underlying cause of action is not related to the defendant's conduct in and connection to the state, the "substantial amount of contacts with the forum state" giving rise to general jurisdiction are significant enough that the defendant "should reasonably anticipate being haled into court there.'" *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1534 (10th Cir. 1996) (quotations omitted).

A corporation's place of incorporation and its principal place of business are the "paradigm bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quotation and brackets omitted). Even if a corporation does not have such paradigmatic contacts with the forum

13

state, it may still be subject to general jurisdiction if it maintains the requisite "continuous and systematic" contacts with the forum. *Manning*, 2018 WL 5892666, at *3. To determine if this is the case, courts consider the following factors:

> (1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation.

*Trierweiler*, 90 F.3d at 1533 (internal citation omitted).

Specific Jurisdiction

Specific jurisdiction, on the other hand, "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear*, 564 U.S. at 919 (quotation marks and citation omitted). "To establish specific jurisdiction, the plaintiff must show that the defendant 'purposefully directed' [its] activities at residents of the forum, and that the plaintiff's injuries 'arise out of or relate to' those activities." *Manning*, 2018 WL 5892666, at *4 (quoting *McManemy*, 2 F. Supp. 3d at 1199). "A defendant 'purposefully directs' activities in a forum where the defendant takes (a) an intentional action that was (b) expressly aimed at the forum state (c) with knowledge that the brunt of the injury would be felt in the forum." *McManemy*, 2 F. Supp. 3d at 1199 (citing *Shrader v. Biddinger*, 633 F.3d 1235, 1239–40 (10th Cir. 2011)).

### ii. Legal Standard for Rule 12(b)(2) Motions

When a defendant brings a motion to dismiss under Fed. R. Civ. P. 12(b)(2) it "test[s] a plaintiff's theory of personal jurisdiction as well as the facts supporting personal jurisdiction." *Davis*, 2016 WL 9774945, at *3. Upon such a motion, the "[p]laintiff bears the burden of demonstrating that jurisdiction exists[,]" but his "burden is light in the early stages of litigation before discovery." *Arnold v. Grand Celebration Cruises, LLC*, No. CV 17-685 JAP/KK, 2017 WL

3534996, at *3 (D.N.M. Aug. 16, 2017) (citing *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995)). Where, as here, "there is no evidentiary hearing and the jurisdictional question is decided on the parties' affidavits and written materials, Plaintiff need only make a prima facie showing of personal jurisdiction." *Manning*, 2018 WL 5892666, at *3 (quoting *Arnold*, 2017 WL 3534996, at *3). He "may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998).

"In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King*, 471 U.S. at 477; subsequent citation omitted). "The Court accepts as true all well-pleaded facts (that are plausible, non-conclusory, and non-speculative) alleged by Plaintiff unless Defendant controverts those facts by affidavit[,]" and "resolves factual disputes in the parties' affidavits in Plaintiff's favor." *Arnold*, 2017 WL 3534996, at *3 (citations omitted).

### C. Analysis

Plaintiff has not met his burden to show that the Court should extend personal jurisdiction over Defendant AHS Medical Holdings, LLC f/k/a Ardent Health Services, LLC. First, the Complaint itself does not present a very strong prima facie case for personal jurisdiction. The only time it mentions Ardent Health Services, LLC (AHS's former name) is to state that it "is a Delaware corporation operating healthcare facilities and employing physicians, and specific to this case, owned and operated Lovelace Medical Group." (Am. Compl. ¶ 11.) He then states that "on information and belief, . . . Ardent Health Services, LLC do[es] business as Ardent Health Services and represent[s itself] as Ardent Health Services through various means, including but not limited

to policies and procedures, employment documents, advertising materials, and the company code of conduct." (*Id.* ¶ 12.)

AHS has specifically challenged and controverted these alleged facts through Mr. Petrovich's sworn declaration. *See Arnold*, 2017 WL 3534996, at *3 (citations omitted). First, it states that AHS is a Delaware corporation (which Plaintiff has explicitly stated as well), and its principal place of business was Tennessee at the time Plaintiff was terminated and denied LTD benefits. (Doc. 17-1 ¶ 3.) Plaintiff does not challenge this fact. As AHS thus does not possess the paradigmatic contacts that give rise to general personal jurisdiction, the Court must consider the factors laid out in *Trierweiler* to determine if the Court may still exercise general personal jurisdiction over AHS based on "continuous and systematic" contacts with New Mexico. *See* 90 F.3d at 1533; *see also Manning*, 2018 WL 5892666, at *3.

Mr. Petrovich's declaration specifically asserts that AHS:

does not (i) have facilities or property in New Mexico; (ii) have employees or officers in New Mexico; (iii) have an agent in New Mexico; (iv) have a business license or transact business in New Mexico; (v) advertise in New Mexico; (vi) hold itself out as a healthcare provider; and (vii) does not conduct business in New Mexico.

(Doc. 17-1 ¶ 9.)

These statements mirror the *Trierweiler* factors, and indeed suggest that AHS does not solicit business in New Mexico "through a local office or agents[,]" send agents into New Mexico "on a regular basis to solicit business[,] . . . hold[] itself out as doing business in" New Mexico, or conduct significant amounts of business in the state. *See Trierweiler* 90 F.3d at 1533. Plaintiff, on the other hand, appears to contest all of Mr. Petrovich's statements by relying on his assertions in the Complaint that (1) AHS is actually doing business as Ardent Health Services, which maintains significant contacts with the state; and (2) AHS "owned and operated Lovelace Medical Group." (*See* Am. Compl. ¶¶ 11–12.) This is so, Plaintiff argues, because all the entities related to Ardent

16

or AHS "act as one organization." (Doc. 42 at 6.) Rather than presenting affidavits or other documents to rebut Mr. Petrovich's specific claims about AHS Medical Holdings, LLC's, Plaintiff instead provides an assortment of documents purportedly demonstrating a completely intertwined corporate identity among most of the named defendants. (*See id.* at 6–12.)

However, the fact that that some employees of AHS's subsidiary *that admittedly sponsored Plaintiff's LTD Plan*, AHS Management Company, Inc. dba Ardent Health Services, also work for the AHS subsidiary *that admittedly employed Plaintiff in New Mexico*, Lovelace Health System, Inc. (*see id.* at 7–9) is of no import in assessing the overarching holding company's contacts with the state.[5] Neither of these Defendants have challenged the Court's exercise of personal jurisdiction in this case. Similarly, the various website pages showing that "Ardent Health Services" and "Lovelace" are overlapping and/or both conduct business in New Mexico (*see id.* at 9–12) do not bear on AHS's contacts with New Mexico because Plaintiff has produced no evidence, beyond the cursory statement in his Complaint, to make a prima facie case that AHS itself does business as "Ardent Health Services."

Plaintiff's arguments and attached documents simply do not support his claim that AHS owns and operates Lovelace Medical Group or "do[es] business as Ardent Health Services and represent[s itself] as Ardent Health Services through various means." (*See* Am. Compl. ¶ 12.) The Court has previously taken judicial notice of the fact that AHS's subsidiary AHS Management

---

[5] Plaintiff does provide some evidence that "key executives" at AHS were also employed by organizations related to Lovelace and thus presumably had contacts with New Mexico. (*See* Doc. 42 at 9). The Court concludes, however, that the mere fact that an AHS executive may also work for an entity that does business in New Mexico does not prove that AHS has sufficient minimum contacts in New Mexico to justify exercising personal jurisdiction. *Cf. Gundlach v. IBM Japan, Ltd.*, 983 F. Supp. 2d 389, 396 (S.D.N.Y. 2013) ("one overlapping executive (especially one . . . who is at the highest level and unlikely to participate in any day-to-day operational or personnel decisions) is insufficient to support the exercise of jurisdiction over" a parent company); *Planned Parenthood of Kan. v. Andersen*, 882 F.3d 1205, 1235 (10th Cir. 2018) (that "affiliates aggregate their finances, share executives, and share legal counsel . . . . do[es] nothing to show that PPFA exercises control over its affiliates' daily operations.").

Company, Inc. owns the service mark "Ardent Health Services" and holds itself out as such, but Plaintiff has not presented any evidence that AHS does so as well. AHS produced a sworn statement that explained it is a holding company that does not "hold itself out as a healthcare provider" nor "conduct business in New Mexico[,]" though its legally distinct subsidiaries do. (*See* Doc. 17-1). Plaintiff has not made a meaningful case for prima facie general personal jurisdiction to rebut AHS's sworn declaration.

Finally, Plaintiff has also failed to present any evidence—affidavits, documents, or even general arguments—that the Court should exercise specific personal jurisdiction over AHS. Plaintiff has not alleged that AHS took any "intentional action that was . . . expressly aimed at the forum state . . . with knowledge that the brunt of the injury would be felt in the forum." *McManemy*, 2 F. Supp. 3d at 1199 (citation omitted). There is simply no evidence in the Complaint or otherwise that the alleged injuries giving rise to Plaintiff's claims—the choice of his LTD Plan, the denial of his claim, the termination of his employment and medical privileges, and the failure to pay short term benefits—were the result of intentional action by AHS in New Mexico.

To the extent that Plaintiff argues the Court should exercise personal jurisdiction over AHS because of its chain of ownership relationship with its subsidiaries, he has failed to make the necessary prima facie case that AHS controlled its subsidiaries to the degree that their minimum contacts in New Mexico should be imputed to the holding company. *See Alto Eldorado P'ship v. Amrep*, 124 P.3d 585, 596 (N.M. Ct. App. 2005). "As a general rule, the mere relationship of parent corporation and subsidiary corporation is not in itself a sufficient basis for subjecting both to the jurisdiction of the forum state, where one is a nonresident and is not otherwise present or doing business in the forum state." *Smith v. Halliburton Co.*, 879 P.2d 1198, 1201 (N.M. Ct. App. 1994)

(quoting 2 James W. Moore et al., Moore's Federal Practice ¶ 4.41–1[6], at 4–370 to –371 (2d ed. 1993)).

However, New Mexico courts do not import a rigid alter ego or corporate liability test for establishing personal jurisdiction over out-of-state corporations. *See Alto Eldorado*, 124 P.3d at 593–94. Rather, "the test is one of constitutional perimeters" that "turn[s] on the facts of each case . . . ." *Id.* at 589, 594 (citation omitted). In *Alto Eldorado*, the court found a corporate parent to have sufficient minimum contacts for personal jurisdiction based on the actions of its subsidiary when "[p]laintiffs made a prima facie case that [the out of state corporation] did not simply own [the in-state subsidiary]; it completely controlled it to the point where [the subsidiary] existed as little more than an instrument to serve [the parent corporation's] real estate interests." *Id.* at 596. In another case, corporate ownership did *not* give rise to sufficient minimum contacts, despite general inclusive language on the corporation's website and in various annual reports and SEC documents. *Quimbey v. Cmty. Health Sys. Prof'l Servs. Corp.*, No. CV 14-559 KG/KBM, 2015 WL 13651239, at *4 (D.N.M. Oct. 1, 2015). The court explained that "the uncontroverted evidence indicates that [the out of state corporation did] not directly own or operate its affiliate hospitals, including those in New Mexico . . . [and] the uncontroverted evidence simply [did] not show a substantial connection between" the events underlying the complaint and the subsidiary's actions as an owner of the hospital where the events took place. *Id.*

Plaintiff has failed to make a prima facie showing that AHS had sufficient minimum contacts with New Mexico to justify general personal jurisdiction, and has failed to allege any direct connection between AHS and the events in New Mexico underlying Plaintiff's claims that would justify exerting specific personal jurisdiction. Further, Plaintiff marshals no evidence—beyond general documents listing various AHS subsidiary names and references to New Mexico—

to argue that AHS so completely controlled the activities of its subsidiaries that operated health care facilities in New Mexico that it should be subject to the state's long-arm statute based on those activities. AHS brought forth a sworn declaration establishing its lack of contacts with New Mexico, and Plaintiff failed to meaningfully rebut those assertions. Thus, the Court will grant AHS Medical Holdings, LLC's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 17.)

**THEREFORE**,

**IT IS ORDERED** that AHS Medical Holdings, LLC's Motion to Dismiss Claims Against Non-Entity "Ardent Health Services" (Doc. 15) is **GRANTED**;

**IT IS FURTHER ORDERED** that Lovelace Health System, Inc.'s Notice of Joinder in Motions to Dismiss (Doc. 22) is **DENIED in part** as to arguments regarding the alleged non-entities "Lovelace Medical Group" and "Lovelace Health System";

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Exceed Page Limits for Exhibits Attached to Plaintiff's Response to Defendant AHS Medical Holdings, LLC's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 36) is **GRANTED;** and AHS Medical Holdings, LLC's Motion to Dismiss for Lack for Personal Jurisdiction (Doc. 17) is **GRANTED**.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE