**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**ELDIE L. CRUZ, M.D.,**

Plaintiff,

v. **No: 1:18-cv-974-RB-SCY**

**LOVELACE HEALTH SYSTEM, INC.,**
**LOVELACE HEALTH SYSTEM, INC. dba LOVELACE MEDICAL GROUP,**
**LOVELACE HEALTH SYSTEM,**
**LOVELACE MEDICAL GROUP,**
**AHS MANAGEMENT COMPANY, INC.,**
**AHS MANAGEMENT COMPANY, INC. dba ARDENT HEALTH SERVICES,**
**AHS NEW MEXICO HOLDINGS, INC.,**
**AHS ALBUQUERQUE HOLDINGS, LLC,**
**BHC MANAGEMENT SERVICES OF NEW MEXICO, LLC,**
**ARDENT HEALTH SERVICES, INC.,**
**ARDENT HEALTH SERVICES, LLC,**
**ARDENT HEALTH SERVICES, and**
**RELIANCE STANDARD LIFE INSURANCE COMPANY,**

Defendants.

## MEMORANDUM OPINION AND ORDER

Dr. Eldie Cruz (Plaintiff) was employed as a general surgeon. He brought suit after being denied long-term disability (LTD) benefits under an employer-sponsored insurance plan. Plaintiff also alleges that his employer violated the ADA by terminating his medical privileges and denying him reasonable accommodation during the medical leave of absence that gave rise to his claim. In this Memorandum Opinion and Order, the Court takes up the individual motions filed by Defendants Reliance Standard Life Insurance Company (Reliance) (Doc. 11) and Lovelace Health System, Inc. (Lovelace) (Doc. 13). The Court finds that Plaintiff has sufficiently pled his ERISA claim against both Reliance and Lovelace and sufficiently pled his ADA claim against Lovelace. The Court will dismiss Plaintiff's state law claims against both Reliance and Lovelace without prejudice as they are either preempted by ERISA or fail to state a plausible claim for relief.

## I. Background[1]

Lovelace employed plaintiff as a general surgeon.[2] (Doc. 71 (Am. Compl.) ¶ 22.) Lovelace was the sponsor and "plan administrator" of a long term disability plan (LTD Plan) that it offered to its employees. (*Id.* ¶ 23.) "Plaintiff participated in the LTD Plan and paid approximately three thousand dollars per year in premiums for disability coverage" under the plan. (*Id.* ¶ 26.) Reliance was the "claims administrator" of the LTD plan. "On March 1, 2016[,] Plaintiff made a claim for [LTD benefits] under the LTD Plan." (*Id.* ¶ 28.) Plaintiff and his physicians "timely provided all required documentation demanded by Reliance in support of his claim for LTD Benefits . . . ." (*Id.* ¶ 29.) Reliance, however, "denied Plaintiff's claim for LTD Benefits eight months after Plaintiff filed his claim, which . . . was more than double the time allowed by Reliance's own internal guidelines to make a determination on disability benefits and over five times longer than allowed by the basic 45 day window specified in" ERISA. (*Id.* ¶ 30.)

In February 2017, Plaintiff attempted to appeal the denial "but Reliance did not respond to Plaintiff's request to appeal." (*Id.* ¶ 31.) On September 5, 2018, Reliance informed Plaintiff's counsel that "the original decision to deny benefits is final. . . . [Reliance] will not initiate another review or reconsideration of the original decision." (*Id.* ¶ 32.) Though it denied Plaintiff's LTD benefits claim, Reliance did determine "that Plaintiff was entitled to three months of LTD benefits to be paid by Lovelace based upon Reliance's finding that Plaintiff met the policy definition of Totally Disabled during the relevant period of time for which Lovelace was responsible to pay . . . ." (*Id.* ¶ 34.) Lovelace did not pay any LTD benefits to Plaintiff. (*Id.*)

---

[1] The facts in this section are taken from Plaintiff's Amended Complaint (Doc. 71 (Am. Compl.)), and all well-pleaded factual allegations are presented in this section as true and construed in the light most favorable to Plaintiff. *See In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1108 (10th Cir. 2015).

[2] In his pleadings and briefing, Plaintiff refers to all the named defendants other than Reliance collectively as "Lovelace" or "the Lovelace Defendants." (Am. Compl. ¶¶ 15, 17.)

Plaintiff did receive "limited short term disability payments in early 2016, but all payments and employment compensation stopped in March 2016 when Lovelace unilaterally put Plaintiff on unpaid leave." (*Id.* ¶ 36.) He has not received any disability benefits since March 2016, and he never received any long term disability benefits from either Lovelace or Reliance. Lovelace did not pay Plaintiff anything between March 1, 2016, and November 25, 2016. (*Id.* ¶ 40.) On November 25, Lovelace issued a one-time final payment to Plaintiff designed by Lovelace as 'EXTRA PY' . . . ." (*Id.*) Lovelace told Plaintiff that the "EXTRA PY" payment covers the LTD Benefits owed to him, but Plaintiff alleges that "the 'EXTRA PY' amount does not equal the amount Lovelace was obligated to pay Plaintiff in LTD Benefits under the terms of the LTD policy, and . . . was reduced by taxes and withholding contrary to the LTD policy language . . . ." (*Id.*)

Also "[b]eginning in early 2016, Plaintiff and his treating physicians repeatedly asked for reasonable accommodation from Lovelace under the ADA to allow Plaintiff to continue to work as a physician and support his family[,]" but Lovelace did not provide the reasonable accommodation he requested. (*Id.* ¶¶ 38–39.) Instead, Lovelace "responded by demanding more and more information over a period of many months," then informed him on July 1, 2016, without notice, that he was fired. (*Id.* ¶ 39.)

On February 27, 2018, "Lovelace notified Plaintiff that his medical privileges with Lovelace were being terminated . . . ." (*Id.* ¶ 41.) He filed a claim with the Equal Employment Opportunity Commission (EEOC) alleging Lovelace violated the ADA by refusing his requests for accommodation, and on October 15, 2018, received a right to sue letter from the EEOC. (*Id.* ¶ 42.) Plaintiff asserts that "[d]uring all relevant periods of time, Plaintiff has been Totally Disabled as defined in the LTD Plan." (*Id.* ¶ 35.) He alleges that "Defendant's wrongful conduct has caused Plaintiff and his family significant" financial damages. (*Id.* ¶ 44.) He brings seven claims for relief:

(1) that Defendants violated ERISA by denying Plaintiff LTD Benefits; (2) that the Lovelace Defendants violated the ADA; (3) that Defendants violated the New Mexico Insurance Code and New Mexico Administrative Code; (4) breach of contract by Defendants; (5) breach of fiduciary duty by Defendants; (6) bad faith by Defendants; and (7) intentional misrepresentation, negligence, and negligent misrepresentation by Defendants. (*Id.* ¶¶ 46–59.)

## II. Legal Standard

In reviewing a motion to dismiss under Rule 12(b)(6), the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1108 (10th Cir. 2015) (citation omitted). "To survive a motion to dismiss," the complaint does not need to contain "detailed factual allegations," but it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

## III. Analysis

### A. The Court will grant Lovelace's Notice of Joinder (Doc. 22) and deny all others.

At the outset, the Court must address the plethora of notices of joinder (and responses and replies thereto) that have been filed in connection with this case. (Docs. 20, 22, 30, 37, 38, 50, 58.) The purpose of the provision in Local Rule 7.1(a) allowing one party to adopt by reference a different motion or document is presumably to promote efficiency and judicial economy. *See*

*Hartford Cas. Ins. Co. v. Trinity Universal Ins. Co. of Kan.*, No. CV 12-1110 MV/KK, 2015 WL 12720321, at *1 (D.N.M. Apr. 17, 2015). To the extent that the arguments in various defendants' motions to dismiss overlap in this case—and they certainly do—this rule is properly invoked when the defendants use it to avoid filing identical, duplicative motions, and Plaintiff should use it to avoid filing identical responses to similar motions, with the result that the entire process is generally streamlined for the Court. *See id.*

While it is true that "Rule 7.1(a) does not specify a time frame in which a party is required to adopt by reference another party's motion" (*see* Doc. 58 at 1–2), the Court doubts it was designed to be used as some of the defendants have utilized it in this case—namely, filing their own fully argued motions to dismiss and then, upon reading *subsequent* similar motions by other defendants, adopting those motions by reference after the fact. Plaintiff argues in response to many of the notices of joinder in this case that "[w]hile it is true that LR 7.1(a) 'allows a party to adopt by reference another party's motion or other paper . . . ,' it does not allow a party to file a second impermissible motion to dismiss, especially after the deadline for filing a motion to dismiss has passed." (*See, e.g.*, Doc. 37 at 2.) The Court agrees.

A party making use of Rule 7.1(a) not to avoid filing duplicative motions but instead to "cover all its bases" by adopting the arguments laid out by *other* defendants that it may have missed or forgotten to include in its own motion strikes the Court as a contortion of the rule. Worse, it actually *decreases* judicial economy and efficiency by requiring the Court to repeatedly cross-reference all the motions and try to deduce which adopted arguments apply to supplement each motion. Though the Court agrees with Plaintiff that the rule is being misused in many of the notices of joinder in this case, the results, here, are negligible. By virtue of reading, analyzing, and ruling

on each motion to dismiss the Court must consider all relevant law and legal arguments that apply to each motion, even if certain issues weren't raised in the briefing.

Still, to the extent that the Court must rule on each of these notices of joinder as they have been docketed and briefed, *see Hartford Cas. Ins. Co.*, 2015 WL 12720321, at *2, the Court finds that only Lovelace's Notice of Joinder (Doc. 22) adopting by reference Reliance's Motion to Dismiss (*id.* ¶ 1) and BHC's Motion to Dismiss (*id.* ¶ 3) are permissible. When Lovelace filed its Motion to Dismiss (Doc. 13) on December 3, 2018, Defendants Reliance and BHC had *already* filed their own motions to dismiss (Docs. 11 and 12.) Thus, judicial economy was well-served by Lovelace incorporating by reference the arguments contained in those motions and focusing its own motion mainly on the ADA claims which are unique to Lovelace. All the other notices of joinder attempting to incorporate by reference *subsequently* filed motions to dismiss, however, are summarily stricken.

### B. Plaintiff fails to state a claim in Count III – New Mexico Insurance Code and Insurance Administrative Code Violations.

Due to the complicated web of named defendants in this case, the determination of whether most of Plaintiff's claims for relief are sufficiently pled is influenced, at least in part, by which defendant is moving to dismiss them. Count III of the Complaint, however, is insufficient on its face as it applies to all named defendants. The Court will dismiss Count III without prejudice.

Plaintiff's broad allegations in Count III state that all defendants violated "the New Mexico Insurance Code, 59A-1-1 through 59A-1-18 including Trade Practices and Frauds, 59A-16-1 through 59A-16-30, and the New Mexico Administrative Code, Title 13 Insurance . . . ." (Am. Compl. ¶ 51.) This claim is not well-pled, as it simply lists broad swaths of the New Mexico Insurance Code without specifying which portions Defendants allegedly violated or how they allegedly did so. In addition, Title 13 of the New Mexico Administrative Code includes 21 distinct

Chapters covering all aspects of insurance regulation, and Count III includes no specific citation to a part of the code and fails even to specify which chapter applies. Sections 59A-1-1 through 59A-1-18 of the Insurance Code are mostly definitions, and it is similarly unclear how much of sections 59A-16-1 through 59A-16-30 would actually apply to Plaintiff's claims.

Section 59A-16-20, the New Mexico Unfair Insurance Practices Act, is perhaps the section Plaintiff indented to cite in arguing that Defendants engaged in unfair insurance trade practices and/or fraud. (*See id.*) But there are no facts asserted in the Complaint, even upon a thorough review construing vague allegations in the light most favorable to Plaintiff, to suggest that any of the defendants' conduct violated any one of the various subsections of the Unfair Insurance Practices Act. The Court will not spend time comparing 48 provisions of the New Mexico Insurance Code and 21 chapters of the New Mexico Administrative Code to the factual allegations in the Complaint in order to guess what Plaintiff is alleging in Count III.

**C. The Court will grant in part Reliance's motion to dismiss and deny Plaintiff's motion to strike.**

In its Motion to Dismiss (Doc. 11) Reliance argues that ERISA governs the LTD Plan and that ERISA thus preempts all the state law claims in the Amended Complaint. (Doc. 11 ¶ 4.) Reliance also argues that Plaintiff's entire complaint should be dismissed with prejudice because "Plaintiff failed to exhaust his administrative remedies as required under ERISA." (*Id.* ¶ 5.) Reliance's motion to dismiss appended a copy of the letter it sent Plaintiff denying his claims. (*See* Doc. 11-1.) Plaintiff then moved to strike the entire motion to dismiss because the exhibit contains Plaintiff's unredacted confidential personal health information "after the date of this Court's order sealing Plaintiff's complaint." (Doc. 35 ¶¶ 2–6.)

**i. Plaintiff's claim against Reliance under ERISA is sufficiently pled.**

The Court turns first to Plaintiff's claims under ERISA.[3] The Complaint alleges that all Defendants violated 29 U.S.C. § 1001 *et seq.* by denying Plaintiff LTD Benefits. (*See* Am. Compl. ¶ 47.) Reliance argues, pursuant to Federal Rule of Civil Procedure 12(b)(6), that Plaintiff has failed to state a claim because he "failed to appeal the denial of benefits" and thus did not exhaust his remedies prior to filing the suit. (*See* Doc. 11 at 3.) The Amended Complaint, however, clearly states that "Plaintiff attempted to appeal the denial of LTD Benefits by Reliance in February 2017 but Reliance did not respond to Plaintiff's request to appeal." (Am. Compl. ¶ 31.) The Amended Complaint also states that Plaintiff made his claim for benefits on March 1, 2016, and that Reliance denied his claim eight months later. (*Id.* ¶¶ 28, 30.) Thus, according to the allegations in the complaint, Reliance would have denied that claim around November 1, 2016.[4] Even if, as Reliance states in its motion to dismiss, Plaintiff was instructed that his appeal must have been submitted within 180 days (*see* Doc. 11 at 8), Plaintiff's alleged attempt to appeal in February 2017 would have been well-within that time frame. Accepting the allegations as pleaded in the Amended Complaint as true and "constru[ing] them in the light most favorable to the plaintiff[,]" the Court concludes that Plaintiff has plausibly alleged that he attempted to appeal the denial of benefits within the window required by Reliance. *See In re Gold Res. Corp.*, 776 F.3d at 1108.

---

[3] As a threshold matter, the Court is able to rule on this Motion to Dismiss without considering evidence outside the pleadings. The Court need not, therefore, convert the motion to one for summary judgment, *see* Fed. R. Civ. P. 12(d), nor consider whether Doc. 11-1 is actually "referred to in the complaint[,] . . . central to the plaintiff's claim," and "indisputably authentic[,]" as is required for materials outside the pleadings to be properly considered on a motion to dismiss. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[4] As the Court has determined it can rule on this motion without reference to materials outside the pleadings, the specific date contained in Reliance's denial letter is not relevant and, even if considered, would not change the Court's analysis or conclusion.

The Tenth Circuit has indeed upheld dismissal of an ERISA lawsuit for failure to exhaust administrative remedies when the plaintiff filed an untimely appeal. *See Benson v. Bridgestone/Firestone, Inc.*, No. 05-6220, 2006 WL 984926, at *1 (10th Cir. Apr. 14, 2006). Here, however, Plaintiff has alleged that he did file a timely appeal and that Reliance failed to respond, which could plausibly be interpreted to fulfill Plaintiff's exhaustion requirement. (*See* Am. Compl. ¶ 31.) *See also* 29 C.F.R. § 2560.503-1 ("in the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan"). Reliance has even conceded that, while unsupported at this stage by documentation, Plaintiff's assertion that he attempted to appeal in February 2017 "is probably sufficient to oppose the Motion to Dismiss." (Doc. 47 at 3.) The Court agrees, and will deny Reliance's motion as to Plaintiff's ERISA claims.

**ii. The Court will deny Plaintiff's motion to strike but will seal the exhibit.**

The Court next turns to Plaintiff's Motion to Strike Reliance's Motion to Dismiss (Doc. 35) based on Reliance's inclusion of an exhibit containing Plaintiff's unredacted confidential health information. On October 19, 2018, Plaintiff moved to file his original complaint under seal to protect his "confidential personal health information." (Doc. 2.) On November 27, 2018, United States Magistrate Judge Steven C. Yarbrough granted the motion to seal the complaint because it "contains allegations regarding Plaintiff's confidential personal health information," but set a hearing at a future date "to address whether the complaint should be unsealed or if a redacted complaint should be filed." (Doc. 10 at 1.) At the hearing on January 15, 2019, Judge Yarbrough ordered Plaintiff to file an amended complaint redacting any confidential information so that the complaint could remain unsealed. (*See* Doc. 68.) Before that hearing occurred, however, Reliance filed its Motion to Dismiss and attached as an exhibit a copy of a letter from Reliance to Plaintiff

denying his claim for LTD Benefits and chronicling the health and treatment information he sought to keep confidential in his complaint. (*See* Docs. 11; 11-1.)

Though Plaintiff indeed failed to seek an order requiring "the filing under seal of all pleading/exhibits which reference Plaintiff's medical condition" (*see* Doc. 46 at 1), the Court considers it disingenuous at best that Reliance filed an unredacted letter laying out Plaintiff's medical information in great detail after Judge Yarbrough clearly found that Plaintiff had an interest in keeping such information confidential. This is particularly so since, by Reliance's own admission, the confidential information "was not the reason why the letter was included with the Motion." (Doc. 46 at 2.)

However, as the Court determined that the exhibit is unnecessary to ruling on the Motion to Dismiss and, as described above, will deny the motion as to Plaintiff's ERISA claims *even accepting as true* Reliance's stated appeal deadline that the letter was introduced to support, the exhibit is irrelevant at this stage. The public's interest in accessing a document that the Court did not consider is correspondingly less strong. Rather than requiring Reliance to redact and refile an irrelevant document, the Court will simply direct the Clerk of Court to seal the exhibit, Doc. 11-1. In future filings, the Court suggests that Defendants redact any confidential health information that is irrelevant to their legal arguments. Plaintiff's Motion to Strike is denied.

**iii. ERISA preempts Plaintiff's state law claims against Reliance**.

Finally, the Court considers whether Plaintiff's state law claims are preempted by ERISA. Embarking on an ERISA preemption analysis, while undoubtedly a complex and case-specific exercise, is no longer the "thicket" and "treacherous path" courts once described, *see Kidneigh v. UNUM Life Ins. Co of Am.*, 345 F.3d 1182, 1184 (10th Cir. 2003), thanks to clarifying guidance from the United States Supreme Court and the Tenth Circuit. Congress enacted ERISA, 29 U.S.C.

§§ 1001 *et seq.*, "to provide a uniform regulatory regime over employee benefit plans. To this end, ERISA includes expansive pre-emption provisions . . . which are intended to ensure that employee benefit plan regulation would be exclusively a federal concern." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (quotation marks and citations omitted). "[T]he Supreme Court has found ERISA to preempt nearly all state claims relating to causes of action against covered health insurers, even when 'the elements of the state cause of action [do] not precisely duplicate the elements of an ERISA claim.'" *Lind v. Aetna Health, Inc.*, 466 F.3d 1195, 1198 (10th Cir. 2006) (quoting *Davila*, 542 U.S. at 216).

Section 502(a) encompasses ERISA's enforcement mechanism, and, relevant to Plaintiff's case, it provides that a participant or beneficiary of an employee welfare benefit plan may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ." 29 U.S.C. § 1132(a)(1)(B). "[T]he ERISA civil enforcement mechanism is one of those provisions with such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Davila*, 542 U.S. at 209 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65–66 (1987)). "It follows that if . . . an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)."[5] *Id.* at 210.

---

[5] There is an important distinction between '"conflict preemption' under § 514 of ERISA and 'complete preemption' under § 502(a) of ERISA." *Felix v. Lucent Techs., Inc.*, 387 F.3d 1146, 1153 (10th Cir. 2004). Conflict preemption refers to the "express preemption provision that provides that ERISA 'shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA.'" *Id.* (citing 29 U.S.C. § 1144(a)). It is generally considered a defense to a state law claim. Complete preemption, on the other hand, occurs when a state law claim could have been brought under §

The Tenth Circuit has elaborated on how to apply this "two-part test" for complete preemption. *Salzer v. SSM Health Care of Okla. Inc.*, 762 F.3d 1130, 1134–35 (10th Cir. 2014) (citing *Davila*, 542 U.S. at 210.) "A claim meets the first prong of the *Davila* test if it asserts rights to which the plaintiff is entitled 'only because of the terms of an ERISA-regulated employee benefit plan.'" *Id.* at 1135 (quoting *Davila*, 542 U.S. at 210). The plan must "form[] an essential part" of the claim—not merely a "tangential" one. *Id.* at 1136 (citations omitted). To meet the second part of the test, the "legal duty at issue [must be able to] be described as 'independent of ERISA.'" *Id.* at 1138 (citing *Davila*, 542 U.S. at 214).

Here, it is clear from the Complaint that all of Plaintiff's state law claims against Reliance arise from the terms of his ERISA-regulated LTD plan, and none of the legal duties attributed to Reliance in the Complaint are independent of ERISA. Plaintiff states that "Reliance was the claims administrator of the LTD Plan" as that term is defined in ERISA. (Am. Compl. ¶ 25.) He asserts that after he made his benefits claim *through the plan*, Reliance "wrongfully denied [his] claim for LTD Benefits eight months after Plaintiff filed his claim . . . ." (*Id.* ¶ 30.) According to Plaintiff, this was "more than double the time allowed by Reliance's own internal guidelines . . . and over five times longer than allowed by the basic 45 day window specified in ERISA." (*Id.*) He then alleges that "Reliance did not respond to Plaintiff's request to appeal" the denial decision (*id.* ¶

502 of ERISA and thus requires the conversion of the state law claim to a federal one. *See Davila*, 542 U.S. at 207–08; *Felix*, 387 F.3d at 1156.

In this case, at the Motion to Dismiss stage, the inquiry properly before the Court is whether complete preemption applies to transform Plaintiff's state law claims into ERISA claims and if so, since the Court already has jurisdiction over Plaintiff's existing ERISA claim, whether it should dismiss any preempted and thus duplicate causes of action. As such, the distinction between conflict and complete preemption is not overly relevant here, but the Court notes that its analysis and references to preemption herein focus on complete preemption under § 502.

31), and reiterates that "[t]o date, Reliance has wrongfully refused to process Plaintiff's request for appeal of the denial of his claim for LTD Benefits . . . ." (*Id.* ¶ 32.)

It is quite obvious that each of Plaintiff's factual allegations against Reliance are tied to Reliance's decision to deny benefits *under the plan* and response to Plaintiff's attempt to appeal Reliance's decision regarding benefits under the plan. Without the ERISA-regulated LTD Plan, Plaintiff would have no claims against Reliance, and these claims easily meet both prongs of the *Davila* test for complete preemption. *See Salzer*, 762 F.3d at 1138 ("interpretation of the Plan is a necessary component of the claim and thus the legal duty at issue cannot be described as independent of ERISA. His right to relief depends upon Plan provisions.") (quotation marks and citation omitted).

A review of each of Plaintiff's state law claims further confirms these conclusions. In Count IV, Breach of Contract, Plaintiff states that "Defendants' actions constitute breach of contract causing Plaintiff damages." (Am. Compl. ¶ 53.) The only contract between Reliance and Plaintiff mentioned in the complaint is the LTD Plan itself. This count is thus clearly preempted to the extent it applies to Reliance. Regarding Counts V – Breach of Fiduciary Duty, VI – Bad Faith, and VII – Intentional Misrepresentation, Negligence and Negligent Misrepresentation, the only relationship Reliance had with Plaintiff was through Reliance's role as his claims administrator for the LTD Plan, and any actions Reliance took that might possibly be construed to amount to any of these torts were directly tied to the administration of the LTD Plan and Plaintiff's benefits under the plan. (*See id.* ¶¶ 25, 30–32, 54–59.) Counts V, VI, and VII are thus completely preempted to the extent they apply to Reliance. *See Sawyer v. USAA Ins. Co.*, 912 F. Supp. 2d 1118, 1145–46 (D.N.M. 2012) ("Because both [plaintiff's] state-law breach of contract and insurance bad-faith claim seek as relief the recovery of benefits allegedly owed . . . by the terms

of her employer-provided plan, these claims against [defendant] conflict with ERISA's remedial scheme and are preempted by ERISA.").

Plaintiff's state law claims against Reliance "brought to remedy only the denial of benefits under an ERISA-regulated benefit plan[], fall within the scope of, and are completely pre-empted by, ERISA § 502(a)(1)(B) . . . ." *See Davila* 542 U.S. at 221. As Count I, Violation of ERISA, sufficiently encompasses all Plaintiff's claims against Reliance as laid out in the Amended Complaint, Counts IV through VII against Reliance are dismissed.

**D. The Court will grant in part Lovelace Health System, Inc.'s Motion to Dismiss.**

**i. Plaintiff's claim that Lovelace violated the ADA (Count II) is sufficiently pled.**

In its motion, Lovelace acknowledges that it operates various healthcare facilities in New Mexico, that it employed Plaintiff as a physician, and that it terminated his employment on July 1, 2016. (Doc. 13 at 2.) It also acknowledges that Plaintiff received notice of a right to sue from the EEOC after he filed a charge of employment discrimination on September 25, 2018, and has appended a copy of the EEOC charge to its motion to dismiss. (*Id.*) Lovelace's main argument is that any alleged failure to provide Plaintiff with reasonable accommodations between early 2016 and July 1, 2016 (*see* Am. Compl. ¶¶ 38–39) would be a discrete action under Title I of the ADA, and thus Plaintiff would have needed to exhaust his administrative remedies within 300 days. (*See* Doc. 13 at 5.) Accordingly, because any obligation by Lovelace to provide reasonable accommodation as Plaintiff's employer would have ceased when he was terminated from employment, Lovelace argues that he failed to timely exhaust administrative remedies under Title I of the ADA because he did not file his charge with the EEOC until two years later. (*Id.*)

In response, Plaintiff contends that the day his hospital privileges were terminated—February 27, 2018—was the date upon which the timeliness clock for ADA violations began to

run. "Dr. Cruz properly and timely exhausted administrative remedies prior to filing this lawsuit because he filed a charge of discrimination with the EEOC within 300 days of the February 27, 2018 termination of his hospital privileges by Lovelace . . . ." (Doc. 44 at 9.) He disagrees with Lovelace's contention that the clock started running on the day it notified Dr. Cruz that he would not receive any additional paychecks from Lovelace. (*See* Doc. 44 at 7.) Plaintiff does not support his argument with any legal authority, and only cites to various exhibits attached to his response containing email chains between Lovelace employees and Plaintiff discussing his work status. (*Id.* at 8.)

As a threshold matter, though it is likely that the Court *could* consider the EEOC charge attached to Lovelace's motion without converting it to a motion for summary judgment because it is referenced in the complaint and Plaintiff has not challenged its authenticity, *see GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997), the Court need not consider any of the outside materials attached to the briefings on this motion and thus need not start down that road.

Instead, the Court considers Plaintiff's ADA allegations laid out in the Complaint and whether, accepting them as true, Count II states a plausible claim for relief. Plaintiff alleges that "[b]eginning in early 2016, Plaintiff and his treating physicians repeatedly asked for reasonable accommodation from Lovelace under the ADA to allow Plaintiff to continue to work as a physician and support his family." (Am. Compl. ¶ 38.) "Lovelace failed to provide the reasonable accommodation requested by Plaintiff and responded by demanding more and more information over a period of many months, which demands ended without prior notice to Plaintiff when Lovelace informed Plaintiff on July 1, 2016 that he was fired." (*Id.* ¶ 39.) Finally, Plaintiff states that "Lovelace's unlawful discrimination against Plaintiff continued to and beyond February 27,

2018 when Lovelace notified Plaintiff that his medical privileges with Lovelace were being terminated, thereby essentially prohibiting Plaintiff from working at all." (*Id.* ¶ 41.)

Thus, it appears that Plaintiff's ADA claims encompass both Lovelace's alleged denial of his accommodation request from early 2016 to July 1, 2016, as well as subsequent discrimination based on the termination of medical privileges that ended in February 2018. The Court finds these allegations sufficiently pled to state a claim for relief and will deny Lovelace's motion for two reasons. First, Lovelace itself points out that "the Tenth Circuit has not squarely addressed whether the denial of a request for accommodation under the ADA is a discrete act that must be timely exhausted . . . ." (Doc. 13 at 6 (citation omitted).) Though the Tenth has noted in dicta that such denials *are* discrete acts, *see Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1210 (10th Cir. 2007), and other circuits have reached the same conclusion (*see* Doc. 13 at 6–7 (collecting cases)), the Court declines to reach such a legal conclusion at the motion to dismiss stage when there is no binding Tenth Circuit guidance.

Second, while the first two ADA-related paragraphs in the Complaint indeed reference Lovelace's denial of accommodation requests that ceased in July 2016, Plaintiff also alleges "unlawful discrimination" by Lovelace when it terminated his medical privileges in 2018. (Am. Compl. ¶ 41.) It is not clear from the Complaint what exactly those medical privileges entailed and whether they impacted Plaintiff's formal employment status, but the Court finds that Plaintiff has sufficiently pled facts at this stage to show plausibly that he had some sort of employment relationship with Lovelace until February 27, 2018, and that he believes Lovelace violated the ADA when it terminated these privileges. Lovelace asserts that, to the extent Plaintiff's ADA claim is "premised upon the termination of his medical staff privileges in 2018, it arises, if at all, under Title III of the ADA" governing discrimination by places of public accommodation "and is

appropriately dismissed because he has failed to state a claim upon which relief can be granted." (Doc. 13 at 3, 7–10.) This novel argument that termination of medical privileges held by a non-employee could fall only under Title III of the ADA as a public accommodation is, however, more properly argued on the merits. Viewing the allegations in the light most favorable to Plaintiff, it appears that he maintained some sort of professional relationship with Lovelace until February 27, 2018, and Lovelace's Motion to Dismiss is denied as to Count II.

**ii. Plaintiff's claim against Lovelace under ERISA (Count I) is sufficiently pled.**

Lovelace properly adopted by reference the arguments in Reliance's and BHC's Motions to Dismiss, both of which challenge the sufficiency of the pleadings in regard to Plaintiff's claim that all the defendants violated ERISA by denying him LTD benefits. (*See* Am. Compl. ¶ 47.) As discussed above, the Court concludes that Plaintiff has plausibly alleged that he attempted to appeal the denial of benefits within the window required by Reliance, so his ERISA claims are not barred by failure to exhaust administrative remedies. *See In re Gold Res. Corp.*, 776 F.3d at 1108; 29 C.F.R. § 2560.503-1.

Further, § 502 provides that a participant or beneficiary of an employee welfare benefit plan may bring a civil action "to recover benefits due to him under the terms of his plan . . . ." 29 U.S.C. § 1132(a)(1)(B). Plaintiff names Lovelace as "the sponsor and plan administrator of the LTD Plan pursuant to ERISA . . . ." (Doc. 71 ¶ 23), and makes various allegations that relate to Lovelace's actions in relation to his benefits under the plan. (*See id.* ¶ 34 ("Plaintiff was entitled to three months of LTD benefits to be paid by Lovelace . . . but Lovelace did not pay LTD Benefits to Plaintiff"); ¶ 40 ("Lovelace issued a one-time final payment to Plaintiff . . . which amount Lovelace now argues is the missing LTD payments").) Plaintiff's ERISA claims against Lovelace are sufficiently pled, and the Court denies Lovelace's motion to dismiss Count I.

### iii. Plaintiff's state law claims, to the extent they are not preempted by ERISA, are not sufficiently pled.

As discussed above, Plaintiff's state law claims against Reliance are preempted because all Plaintiff's claims against Reliance are directly tied to its decision to deny him LTD benefits under the LTD plan. As Plaintiff's alleged employer, Lovelace likely does have legal and contractual duties to Plaintiff that are unrelated to his LTD Plan and would thus not be completely preempted by ERISA. However, the Complaint is devoid of any factual allegations to plausibly show the existence of such duties and that Lovelace breached them. Plaintiff argues that "[i]t is apparent that Dr. Cruz had an employment contract with defendants" and that as a result of that employment relationship "defendants were obligated to not breach that contract, to not breach their fiduciary duty to Dr. Cruz, to not make any intentional misrepresentations with respect to Dr. Cruz, to not act with negligence with respect to Dr. Cruz, and to not make any negligent misrepresentations as to Dr. Cruz." (Doc. 41 at 14–15.) Even accepting these assertions as true, nothing in the complaint "allows the court to draw the reasonable inference" that Lovelace breached such duties in any way other than denying Plaintiff LTD benefits under the plan. *See Iqbal*, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

Plaintiff's most robust state law claim asserts that Lovelace:

> breached its fiduciary duty by failing to procure long term disability insurance from an insurer that would responsibly, fairly and timely process and pay for valid claims by Lovelace employees including Plaintiff, by failing to procure long term disability insurance with adequate coverage for insureds who suffer from disabilities like those Plaintiff suffers from, and by failing to provide information to Plaintiff detailing the long term disability coverage that Lovelace brokered which was sold to Plaintiff as a take-it-or-leave-it part of his employment as a Lovelace physician.

(Am. Compl. ¶ 24). On their face, these allegations are not directly related to benefits Lovelace allegedly owes Plaintiff under the plan, but instead relate to Lovelace's actions in procuring and choosing an adequate plan and the information it did (or didn't) provide to Plaintiff about the LTD

Plan when he was negotiating his employment. Still, Plaintiff has failed to allege that Lovelace had an independent fiduciary duty to Plaintiff unrelated to its role as plan administrator. These assertions are simply not sufficient to state a plausible claim that Lovelace owed Plaintiff a fiduciary duty merely by virtue of his employment. To the contrary, the Complaint states specifically that "Lovelace employed Plaintiff as a general surgeon and offered the [LTD Plan] to its employees including Plaintiff as an organization affiliated with the Plan pursuant to ERISA, . . . [and] Lovelace was the sponsor and plan administrator of the LTD Plan pursuant to ERISA . . . ." (Am. Compl. ¶¶ 23–24.)

Plaintiff simply pleads no facts that, if true, would create a plausible claim that Lovelace, acting in its capacity as Plaintiff's employer and *not* as the administrator of his LTD Plan, breached the employment contract, breached a fiduciary duty it owed Plaintiff unrelated to his LTD plan, acted in bad faith, or made negligent or intentional misrepresentations to him. Pursuant to Rule 12(b)(6), Counts IV, V, VI, and VII are thus dismissed as they apply to Lovelace.

**THEREFORE**,

**IT IS ORDERED** that Defendant Reliance Standard Life Insurance Company's Motion to Dismiss (Doc. 11) is **DENIED in part** as to Count I and **GRANTED in part** as to Counts III through VII;

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike the Motion to Dismiss by Reliance Standard Life Insurance Company (Doc. 35) is **DENIED**; and

**IT IS FURTHER ORDERED** that Defendant Lovelace Health System, Inc.'s Motion to Dismiss (Doc. 13) is **DENIED in part** as to Counts I and II and **GRANTED in part** as to Counts III through VII.

**ROBERT C. BRACK**
**SENIOR U.S. DISTRICT JUDGE**