IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**ELDIE L. CRUZ, M.D.,**

    Plaintiff,

v.                                                                                                                    No: 1:18-cv-974-RB-SCY

**LOVELACE HEALTH SYSTEM, INC.,**
**LOVELACE HEALTH SYSTEM, INC. dba LOVELACE MEDICAL GROUP,**
**LOVELACE HEALTH SYSTEM,**
**LOVELACE MEDICAL GROUP,**
**AHS MANAGEMENT COMPANY, INC.,**
**AHS MANAGEMENT COMPANY, INC. dba ARDENT HEALTH SERVICES,**
**AHS NEW MEXICO HOLDINGS, INC.,**
**AHS ALBUQUERQUE HOLDINGS, LLC,**
**BHC MANAGEMENT SERVICES OF NEW MEXICO, LLC,**
**ARDENT HEALTH SERVICES, INC.,**
**ARDENT HEALTH SERVICES, LLC,**
**ARDENT HEALTH SERVICES, and**
**RELIANCE STANDARD LIFE INSURANCE COMPANY,**

    Defendants.

## MEMORANDUM OPINION AND ORDER

Dr. Eldie Cruz (Plaintiff) filed for long-term disability (LTD) following a leave of absence from the hospital where he worked. He was eventually fired and lost his medical privileges. Plaintiff named 13 defendants in his suit, with most somehow connected to his employer through a web of corporate ownership. Having previously addressed several motions in two Memorandum Opinions and Orders (Opinions) (*see* Docs. 88; 90), the Court will now take up the Motion to Dismiss of AHS Management Company, Inc., AHS New Mexico Holdings, Inc.,[1] AHS

---

[1] Plaintiff cites D.N.M. LR-Civ. 10.2 to show how AHS's Motion to Dismiss offers an unclear picture of the parties represented. (Doc. 41 at 2–3.) He states that because the motion's title does not correspond to the parties listed in the first paragraph, the Court should deny. (*Id.* at 3.) While the title does exclude AHS New Mexico Holdings, Inc., the Court finds this to be harmless error, as the first paragraph and signature block make clear which parties sought relief. (Doc. 16 at 1.)

Albuquerque Holdings, LLC, and AHS Medical Holdings, LLC[2] (collectively AHS) (Doc. 16), as well as the Motion to Dismiss of BHC Management Services of New Mexico, LLC (BHC). (Doc. 12.) After evaluating Plaintiff's claims and the complex business relationships at issue, the Court dismisses all claims against AHS and BHC for failure to state a claim.

**I.      Background**

The facts of this case were extensively recounted in Opinions filed on August 26, 2019 (Doc. 88) and September 3, 2019 (Doc. 90.) The Court will briefly repeat pertinent background information and include a few additional facts applicable to the current motions.

Lovelace employed Plaintiff as a general surgeon.[3] (Doc. 71 (Am. Compl.) ¶ 22.) Lovelace was the sponsor and "plan administrator" of an LTD plan. (*Id.* ¶ 23.) Reliance was the "claims administrator" of the LTD plan. (*Id.* ¶ 25.) Plaintiff received limited short-term disability payments in early 2016, (*id.* ¶ 36), but made an LTD benefits claim on March 1, 2016. (*Id.* ¶ 30.) Reliance, however, "denied Plaintiff's claim for LTD Benefits." (*Id.* ¶ 30.) After a failed appeal in February 2017, Reliance determined in September 2018 "that Plaintiff was entitled to three months of LTD benefits to be paid by Lovelace based upon Reliance's finding that Plaintiff met the policy definition of Totally Disabled." (*Id.* ¶ 34.) But Lovelace did not pay any LTD benefits to Plaintiff. (*Id.*)

Throughout this period, Plaintiff "repeatedly" asked Lovelace for ADA accommodation so that he could continue to work, but Lovelace failed to provide the requested accommodation. (*Id.*

---

[2] The Court granted AHS Medical Holdings, LLC's Motion to Dismiss the claims against non-entity Ardent Health Services in an earlier Opinion. (Doc. 88.) AHS Medical Holdings, LLC is not a named party in the case. Therefore, "AHS" Defendants throughout this Opinion refer collectively to AHS Management Company, Inc., AHS New Mexico Holdings, Inc., and AHS Albuquerque Holdings, LLC.

[3] In his pleadings and briefing, Plaintiff refers to all the named defendants other than Reliance collectively as "Lovelace" or "the Lovelace Defendants." (Doc. 71 (Am. Compl.) ¶¶ 15, 17, 18.) But in this Opinion, the Court will refer only to Plaintiff's direct employer—Lovelace Health Systems, Inc.—as "Lovelace."

¶¶ 38–39.) Lovelace "responded by demanding more and more information over a period of many months," then informed Plaintiff on July 1, 2016, without notice, that he was fired. (*Id.* ¶ 39.) On February 27, 2018, "Lovelace notified Plaintiff that his medical privileges with Lovelace were being terminated . . . ." (*Id.* ¶ 41.) He filed a claim with the Equal Employment Opportunity Commission (EEOC) alleging that Lovelace violated the ADA by refusing his requests for accommodation, and on October 15, 2018, received a right to sue letter from the EEOC. (*Id.* ¶ 42.)

This Opinion takes on the residual issues remaining from the first two Opinions (Docs. 88; 90.) In its motion, the remaining AHS parties argue that the Court should dismiss Counts I–VII for failure to state a claim.[4] (Doc. 16.) BHC also asks the Court to dismiss Counts I–VII.

## II. Legal Standard

### a. Failure to State a Claim

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), but it need not include "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). A failure to adequately plead permits district courts to dismiss a complaint for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, the court, taking all allegations in the complaint as true, must evaluate whether the complaint contains "a plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citation omitted). Though no probability requirement exists, the *plausibility standard* "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (citation omitted). Dismissal becomes appropriate when it is "obvious" that there is no way to prevail using the pleaded facts.

---

[4] AHS attempted to join Lovelace's Motion to Dismiss the ADA claim, (Doc. 16 at 7 n.5), but in its September 3, 2019 Opinion, the Court limited joinder to Lovelace's adoption of portions of Reliance's Motion to Dismiss and BHC's Motion to Dismiss, (Doc. 90 at 4–7.) Still, AHS addresses the ADA claim indirectly in its Motion to Dismiss. (Doc. 16 at 9–10.)

*See Brown v. Sherrod*, 284 F. App'x 542, 543 (10th Cir. 2008); *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

### b. ERISA Standards

The Employee Retirement Income Security Act of 1978 (ERISA) permits employee participants or beneficiaries "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Despite the lack of explicit statutory language defining which parties may be subject to suit, courts have coalesced around the idea that plan administrators are the primary defendants in ERISA suits. *See Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 584 (6th Cir. 2002) ("It is well established that only plan administrators are liable for statutory penalties."); *Garren v. John Hancock Mut. Life Ins. Co.*, 114 F.3d 186, 187 (11th Cir. 1997) ("The proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan."); *Averhart v. US WEST Mgmt. Pension Plan*, 46 F.3d 1480, 1489 (10th Cir. 1994) (holding that only the plan administrator could be held liable under ERISA). A plan administrator owes a "duty of care to the beneficiaries, and is legally responsible both for its own decisions and also for decisions made by its agent." *Geddes v. United Staffing All. Emp. Med. Plan*, 469 F.3d 919, 931 (10th Cir. 2006) (citations omitted). The Tenth Circuit has made it clear that "ERISA beneficiaries may bring claims against the plan as an entity and plan administrators." *Id.*

Still, some circuits have "found that entities other than the benefits plan or the employer plan administrators may be held liable under § 1132(a)(1)(B)." *LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 843 (5th Cir. 2013) (citations omitted); *see also Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202, 1206 (9th Cir. 2011) (*en banc*) (holding that defendants are not limited to plan administrators); *Mein v. Carus Corp.*, 241 F.3d 581, 585 (7th Cir. 2001)

(holding that defendants beyond the plan administrator may be named). This deviation only occurs, however, when a non-administrator entity "exercises 'actual control' over the administration of the plan." *LifeCare*, 703 F.3d at 844 (citations omitted). To subject a *de facto* administrator to suit, the entity must effectively manage the plan. *See Law v. Ernst & Young*, 956 F.2d 364, 373–74 (1st Cir. 1992) (discussing how defendant used its stationary to communicate with plan participants, managing the information flow and behaving as the *de facto* plan administrator).

   c. **ADA Standards**

The Americans with Disabilities Act (ADA) includes three separate titles: the first covers employment discrimination, *see* 42 U.S.C. §§ 12111–12117, the second covers discrimination by government entities, *see id.* §§ 12131–12165, and the third covers discrimination by places of public accommodation, *see id.* §§ 12181–12189. Title I, the primary focus of the briefing,[5] provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . discharge of employees . . . and other terms, conditions, and privileges of employment." *Id.* § 12112(a).

Just as courts limit ERISA claims to plan administrators, they hesitate to subject parent organizations to ADA liability for subsidiary actions. *See Pap v. Katy Indus., Inc.*, 166 F.3d 937, 940–41 (7th Cir. 1999). To hold the parent company liable for the subsidiary's violation, Plaintiff must show that the "two entities effectively constitute a single employer." *Sandoval v. City of Boulder*, 388 F.3d 1312, 1322 (10th Cir. 2004); *see also Florez v. Holly Corp.*, 154 F. App'x 707, 708 (10th Cir. 2005) (holding that Plaintiff must demonstrate a close relation between the parent and subsidiary to make out an ADA claim). Courts assess four factors to decide whether the entities operate as one employer: "(1) interrelations of operation; (2) common management; (3) centralized

---

[5] Title III is also discussed, but the Court held that this issue is better reserved for the merits. (Doc. 90 at 17.)

control of labor relations; and (4) common ownership and financial control." *Bristol v. Bd. of Cty. Comm'rs of Cty. of Clear Creek*, 312 F.3d 1213, 1220 (10th Cir. 2002) (quoting *EEOC v. Wooster Brush Co. Emps. Relief Ass'n*, 727 F.2d 566, 572 (6th Cir. 1984)); *see also Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 994 (6th Cir. 1997) (reiterating the "common management" requirement). Liability only arises when the parent organization's involvement whittles away any dividing wall between the corporate entities. *See Praseuth v. Newell-Rubbermaid, Inc.*, 219 F. Supp. 2d 1157, 1181–92 (D. Kan. 2002) (describing how the parent organization issued paychecks and controlled the retirement program at issue). Therefore, only an entity directly, or at least closely, involved in a violation is properly named a defendant in both ERISA and ADA suits.

## III. Analysis

### a. AHS and BHC's Motions to Dismiss the ERISA Claims (Count I)

Only Defendants AHS Management Company, Inc., AHS New Mexico Holdings, Inc., and AHS Albuquerque Holdings, LLC (AHS) remain among the parties listed in the AHS Motion to Dismiss. (*See* Doc. 16 at 1.) Additionally, the Court will address the ERISA claim from BHC's Motion to Dismiss (Doc. 12) because the arguments and counterarguments overlap.

AHS maintains that Plaintiff may only properly name "the party that controls administration of the plan" in a lawsuit. (Doc. 16 at 4.) Despite the collective grouping under "Lovelace" throughout Plaintiff's Complaint, AHS states that the only "plausible allegations . . . establish that Defendant Reliance was the administrator of the long term disability benefits plan." (*Id.*) Likewise, BHC states that while Plaintiff alleges "that 'Lovelace,' 'Lovelace Defendants' and/or 'Defendants' engaged in conduct that supports his claims, Plaintiff makes no pretense of advising BHC what conduct allegedly constitutes the tort or violation." (Doc. 12 at 4.) BHC did not employ Plaintiff, and "BHC had [no] authority or control in the management or administration

of the LTD plan." (*Id.* at 4–5.) Therefore, without pleadings that demonstrate AHS or BHC's control over the administration of the plan, no liability exists.

In response, Plaintiff contends that "[n]umerous paragraphs of the Complaint provide detailed allegations as to [AHS]" (Doc. 41 at 4), and that within the introductory 18 paragraphs in the Complaint, there are "allegations that relate specifically to BHC" (Doc. 39 at 2). He lists the introductory paragraphs stipulating that both AHS and BHC "owned and operated the Lovelace Medical Group." (*Id.* (quoting Doc. 1 (Compl.) ¶¶ 7–9).) He later reiterates court precedent that plan administrators are not the only parties subject to suit under ERISA, claiming that *de facto* administrators also fall within the statute's scope. (*Id.*)

Plaintiff is correct that the universe of ERISA defendants is not limited to the named administrator. (*Id.* at 6.) But this occurs only when the entity in question exerts control over the benefits plan. *See LifeCare*, 703 F.3d at 844; *Law*, 956 F.2d at 373–74. For instance, the insurance company in *LifeCare* had the power to receive and deny claims, 703 F.3d at 845–46, and the employer in *Law* communicated with plan participants on official stationary, indicating administrative involvement, 956 F.2d at 374. In the present case, Plaintiff makes no similar contention and pleads no facts that even hint at AHS or BHC exerting administrative control. Beyond the cursory discussion at the Complaint's outset—stating that both AHS and BHC own Lovelace (with no distinction)—Plaintiff offers no facts providing that AHS or BHC directly violated ERISA.

Contrary to the lack of detail surrounding AHS and BHC's involvement, Plaintiff includes several specific paragraphs describing his interactions with Reliance. (Doc. 71 ¶¶ 30–34.) He writes that "Reliance was the claims administrator of the LTD Plan . . . ." (*Id.* ¶ 25.) Plaintiff then alleges that "Reliance wrongfully denied Plaintiff's claim for LTD Benefits eight months after

Plaintiff filed his claim" (*id.* ¶ 30), and that "Reliance has wrongfully refused to process Plaintiff's request for appeal of the denial of his claim for LTD Benefits" (*id.* ¶ 32.) These very specific claims hardly resemble those made against AHS and BHC. In fact, aside from the listed ownership information at the beginning of the Complaint, AHS and BHC are not specifically mentioned again, save for their broad incorporation into the "Lovelace Defendants" category. (*Id.* ¶ 15.)

In a previous Opinion, the Court disentangled the web of corporate ownership at issue, primarily based on corporate disclosures (Docs. 31; 33) and Executive Vice President Stephen C. Petrovich's Declaration (Doc. 17-1) describing AHS's structure. (Doc. 88 at 10.) Within the corporate hierarchy, Lovelace falls under AHS New Mexico Holdings, LLC. (Doc. 17-1 ¶ 4.) Lovelace directly employed Plaintiff. (Doc. 71 ¶ 22.) AHS's Corporate Disclosure Statement offers additional detail, stating that "AHS New Mexico Holdings, Inc. is the direct parent company of AHS Albuquerque Holdings, LLC." (Doc. 33 ¶ 2.) The connection between Lovelace and BHC is even more opaque. In its Corporate Disclosure Statement, BHC contends that it is an LLC and "wholly-owned subsidiary of Mesilla Valley Hospital, Inc. and an indirect subsidiary of Universal Health Services, Inc. a publicly-traded corporation." (Doc. 31 at 1.) Thus, any relation between AHS and Lovelace appears—at best—distant and wholly undescribed in Plaintiff's Complaint or Response. Reliance exists as a separate entity entirely. And the Complaint states that during his multiple attempts to receive LTD benefits, Plaintiff exclusively communicated with Reliance and Lovelace. (Doc. 71 ¶¶ 30–34.)

On multiple occasions, Plaintiff declares that it is "difficult to imagine how the complaint could be more detailed." (Docs. 41 at 5; 39 at 3.) The Court's imagination is perhaps less strained. Nowhere in the Complaint does Plaintiff state that he sought benefits from AHS or BHC. Nowhere in the Complaint does Plaintiff state that he received plan administration information from AHS

or BHC. Nowhere in the Complaint does Plaintiff state that he had any communication with AHS or BHC. There are no facts describing AHS or BHC as *de facto* plan administrators. Plaintiff only responds with caselaw describing uncommon instances of non-administrator liability, failing to provide any detail fitting AHS or BHC into those limited circumstances. (*See* Doc. 41 at 8.) Without well-pled facts that show the possibility of AHS or BHC assisting in plan administration, no claim for relief can be made.

The Court will expound briefly on two additional arguments Plaintiff makes. First, Plaintiff says that he requires additional fact-finding to ascertain the corporate relationships at issue. (Doc. 41 at 5.) In the hope of reaching discovery, Plaintiff throws every subsidiary at the wall in a see-what-sticks approach that fails to serve the dual interests of justice and efficiency. Without direct allegations, the Court struggles to see how allowing Plaintiff's fishing expedition changes the outcome. *See United States v. Nixon*, 418 U.S. 683, 700 (1974); *see also United States v. Morris*, 287 F.3d 985 (10th Cir. 2002) (holding that an entire FBI file was not discoverable). Again, nowhere in the Complaint does Plaintiff contend that he interacted with representatives of or communicated with AHS or BHC. The entire dispute at issue centers around Plaintiff's employment with Lovelace and his dealings with Reliance.

Second, the Court agrees with Plaintiff that Defendants' piercing the corporate veil argument is not proper (*see* Doc. 41 at 10), but only because it is not necessary at this stage. To reach a decision on the Motion to Dismiss for failure to state a claim, the Court need not delve into the depths of New Mexico corporate law to discern whether these parent organizations were fundamentally intertangled with their subsidiaries. Rather, ERISA precedent properly guides the Court, and sister circuits have made clear the rare occasions when *de facto* administrators are liable. Therefore, because Plaintiff failed to plead facts to plausibly show how defendants violated

9

ERISA, the Court will grant both AHS and BHC's Motions to Dismiss for Failure to State a Claim as to Count I.

### b. BHC's Motion to Dismiss the ADA Claim (Count II)

BHC also moves to dismiss Plaintiff's ADA claim.[6] (Doc. 12.) It states that "[b]oth ERISA and the ADA contain voluminous statutory sections and subsections making it impossible to discern what claim Plaintiff is making under either of the Acts." (Doc. 12 at 4.) Nevertheless, in a previous Opinion, the Court found that Plaintiff offered enough detail to describe the ADA violations alleged—at least against Lovelace. (Doc. 90 at 14–17.) In the Motion at issue, however, the base of BHC's argument for Counts I and II is that BHC neither employed Plaintiff, nor interacted with Plaintiff in any capacity regarding his LTD benefits or accommodation. BHC states that "Plaintiff does not allege that BHC had any knowledge of his alleged disability, that BHC failed to provide Plaintiff with reasonable accommodations, or that BHC revoked his medical privileges or terminated his employment." (Doc. 12 at 5.) Plaintiff responds only with citations of the three paragraphs in the beginning of the Complaint that mention or incorporate BHC. (Doc. 39 at 2 (quoting Doc. 71 ¶¶ 9, 15, 18).)

Plaintiff's response lacks detail and makes no specific reference to the ADA claims. Similar to ERISA cases, courts have limited the universe of possible defendants in ADA suits. To find liability, parent organizations must participate in the violative conduct, such that the legal barrier between the parent and subsidiary effectively vanishes. *Sandoval* holds that the parent-subsidiary must act as a "single employer." 388 F.3d at 1322. The *Wooster Brush* factors elaborate on when liability of a parent organization is found. The Court previously found that Plaintiff

---

[6] BHC did not join another defendant's motion to dismiss the ADA claim—the course AHS pursued—and instead includes all of its arguments in a standalone motion. (*See* Doc. 12.)

pleaded sufficient facts to avoid Lovelace's Motion to Dismiss the ADA claim. (Doc. 90 at 14.) Lovelace employed Plaintiff and allegedly failed to make accommodations. (*Id.* at 14–15.)

Plaintiff's Complaint, however, fails to describe how BHC violated the ADA. While the pleading stage of litigation does not require an exhaustive description to state a claim for relief, it does require Plaintiff to provide enough information to make out plausible claims. Here, Plaintiff makes no direct allegations against BHC; its only violation appears to be the existence of a distant corporate connection to Lovelace. Because this pleading is insufficient to tie BHC to any potential ADA violation, the Court sees no need to apply the *Wooster Brush* factors. Had Plaintiff claimed in the Complaint that BHC was acting on behalf of Lovelace in its failed accommodations, then the Opinion would include a detailed discussion. As a result, the Court has no choice but to dismiss the ADA claim (Count II) against BHC.

c. **AHS's Motion to Dismiss the ADA Claim (Count II)**

AHS's Motion to Dismiss the ADA claim is less straightforward. In its motion, AHS stated that the ADA claim "is not at issue [here]," (Doc. 16 at 7), and that in a footnote it was joining "Defendant Lovelace Health System, Inc.'s motion to dismiss Plaintiff's ADA claims." (Doc. 16 at 7 n.5.) In an earlier Opinion, however, the Court found that the joinder among defendants was excessive and denied all notices except for two[7] that are not relevant here. (Doc. 90 at 4–6.) In so holding, the Court aimed to ensure efficiency and avoid defendants filing "their own fully argued motions to dismiss and then, upon reading *subsequent* similar motions by other defendants, adopting those motions by reference after the fact." (*Id.* at 5.)

---

[7] The Court ruled that "judicial economy was well-served by Lovelace incorporating by reference the arguments contained in those motions and focusing its own motion mainly on the ADA claims which are unique to Lovelace." (Doc 90 at 6.) The Court allowed Lovelace to join portions of Reliance and BHC's motions to dismiss. (Doc. 22 ¶¶ 1, 3.)

But despite the explicit attempt to join Lovelace's argument, AHS still addresses the ADA issue at the end of its motion, arguing that Plaintiff's claim fails because there is no indication that the parent organization directly participated in the violation. (Doc. 16 at 9–10.) AHS then explains in reply: "Plaintiff has not pled a valid ADA claim . . . because Plaintiff fails to allege any facts that demonstrate . . . Defendants controlled [Lovelace] to the extent required to support an inference that two related entities constitute a single employer for purposes of federal employment discrimination claims." (Doc. 53 at 5.) Here, AHS adequately presented the issue in its Motion to Dismiss. Thus, Plaintiff had sufficient notice to address its failure to state a claim and was not blindsided with AHS's Reply (Doc. 53.) While it is improper for courts to unilaterally rule on unbriefed issues, AHS satisfactorily—albeit disjointedly—moved for Count II's dismissal. The Court prefers the route of judicial economy to address all related claims in the present Opinion. Therefore, the Court also dismisses the ADA claim (Count II) against AHS.

### d. State Law Claims (Counts III–VII)

In its September 3, 2019 Opinion, the Court dismissed the alleged violations of the New Mexico Insurance Code and Insurance Administrative Code (Count III). (Doc. 90 at 6–7.) Because ERISA preempted the state law claims, it also dismissed Counts IV–VII against Reliance. (*Id.* at 13–14.) Further, the Court dismissed Counts IV–VII against Lovelace Health Systems, Inc. because they were not sufficiently pled. (*Id.* at 18–19.)

The Court will not rehash each of these arguments as they pertain to AHS and BHC. Both motions (Docs. 12; 16) ask the Court to dismiss all claims against defendants. Count III was not sufficiently pled against any defendant; therefore, the Court reiterates for clarity its dismissal against AHS and BHC. Regarding Lovelace's motion to dismiss, the Court found that "Lovelace likely does have legal and contractual duties to Plaintiff that are unrelated to his LTD Plan and

would thus not be completely preempted by ERISA." (Doc. 90 at 18.) Nevertheless, Plaintiff pleaded no facts that "if true, would create a plausible claim that Lovelace" is liable under the state law claims listed in Counts IV–VII. The same logic applies to Lovelace's distant corporate relatives, and for the sake of efficiency, the Court now incorporates its earlier holdings and applies them to AHS and BHC. (Doc. 90.)

**THEREFORE**,

**IT IS ORDERED** that Defendant BHC's Motion to Dismiss Plaintiff's Complaint for failure to state a claim (Doc. 12) is **GRANTED**, and BHC Management Services of New Mexico, LLC is therefore **DISMISSED** from this lawsuit.

**IT IS FURTHER ORDERED** that Defendant AHS's Motion to Dismiss Plaintiff's Complaint for failure to state a claim (Doc. 16) is **GRANTED**, and AHS Management Company, Inc., AHS New Mexico Holdings, Inc., and AHS Albuquerque Holdings, LLC are therefore **DISMISSED** from this lawsuit.

_____
**ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE**