## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

ELDIE L. CRUZ, M.D.,

       Plaintiff,

v.                                     No. CIV 18-0974 RB/SCY

RELIANCE STANDARD LIFE INSURANCE COMPANY,

       Defendant.

### MEMORANDUM OPINION AND ORDER

Plaintiff Eldie Cruz, M.D. and Reliance Standard Life Insurance Company (Reliance) have filed cross-motions for summary judgment regarding Cruz's claim arising under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461. Reliance denied Cruz long-term disability (LTD) benefits under an employer-sponsored insurance plan. Cruz did not file a timely appeal of the denial. Consequently, Reliance argues that Cruz failed to exhaust his administrative remedies and that his lawsuit should be dismissed. As discussed below, however, Reliance failed to substantially comply with ERISA's procedural requirements, and Cruz was prejudiced thereby. Thus, Cruz's failure to exhaust is deemed excused. Further, because Reliance violated ERISA's procedural requirements, the Court finds that a *de novo* standard of review governs Cruz's claim. The Court will direct the parties to submit supplemental briefing before it renders a decision on the merits of Cruz's benefits claim.

### I.    Background

Cruz worked as a general surgeon with Lovelace Medical Group (Lovelace). (*See* Administrative Record (AR)[1] at 172, 196.) Through his employment, Cruz participated in a

---

[1] Documents 124-1–9 contain the sealed Administrative Record. The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

disability insurance plan issued and administered by Reliance. (*See id.* at 1, 155–59.) On November 10, 2015, Mr. Cruz self-admitted to a 30-day drug rehabilitation program due to substance and alcohol abuse. (*See id.* at 156, 209.) In the months following, he continued to experience symptoms and limitations related to his substance and alcohol abuse. (*See*, *e.g.*, *id.* at 321, 343.) Eventually, Cruz filed a claim for LTD benefits, for which Reliance confirmed receipt on March 24, 2016. (*Id.* at 118.)

Reliance's communication log reflects that a representative spoke with Cruz on October 14, 2016, and explained that Reliance determined Cruz was not totally disabled as of May 1, 2016. (*Id.* at 75.) Cruz "disagreed with this assessment[] and stated that he may need to get an attorney." (*Id.*) The representative "advised that [Cruz] does have the option to submit a written appeal, and that a letter will be sent shortly with more information." (*Id.*) Reliance sent this letter on October 19, 2016. (*See id.* at 155.)

Over two hundred days passed from March 24, 2016, the day Reliance confirmed receipt of Cruz's claim for LTD benefits, to October 19, 2016, the day it sent him written notice of denial. Reliance stated that Cruz did "not meet the requirements of the group Policy definition for Total Disability from [his] Regular Occupation through the end of the Elimination Period."[2] (*Id.* at 155.) The "Elimination Period . . . begins on the first day of Total Disability[,]" consists of "180 consecutive days of Total Disability[,]" and is a period "for which no benefit is payable." (*Id.* at 156.) For Cruz to be eligible for LTD benefits, he must have been considered Totally Disabled from November 10, 2015, through the end of the 180-day Elimination Period: May 8, 2016. (*See id.*) Reliance set out the information it considered in finding that Cruz "fail[ed] to establish that

---

[2] "'Total Disability' mean[s] that as a result of an Injury or Sickness, during the Elimination Period and thereafter an Insured cannot perform the material duties of his/her Regular Occupation . . . ." (AR at 155.)

[he was] unable to perform the material duties of [his] Regular Occupation throughout [the] 180-day Elimination Period." (*See id.* at 157–58.)

Reliance asserts that under the plan, "'Regular Occupation' means the occupation the Insured is routinely performing when Total Disability begins. [Reliance] will look at the Insured's occupation as it is normally performed in the national economy, and not the unique duties performed for a specific employer or in a specific locale." (*Id.* at 156.) A rider applicable to Class 2, physicians, however, contains a different definition.

> "Regular Occupation" with respect to physicians means the Insured's general or sub-specialty in the practice of medicine during the [36] months immediately before his/her Total Disability begins and for which he/she is certified by the American Board of Medical Specialties. If the specialty or sub-specialty in which the Insured is practicing is not recognized by the American Board of Medical Specialties during the [36] months immediately before his/her Total Disability begins, he/she will be considered a general practitioner.

(*Id.* at 38.) A Reliance representative referred to this second definition in communications with Lovelace. (*See id.* at 196.) Record evidence demonstrates that Cruz was considered a surgeon (*see, e.g.*, *id.* at 172, 196), and in at least one internal communication note, Reliance states that Cruz was a Surgeon. (*See id.* at 69, 375–77.) In its benefits determination, however, Reliance used the first definition of Regular Occupation and found that Cruz was a Physician, General Practice. (*See id.* at 156.)

The denial letter apprised Cruz of his right to submit a "written request for review" of the decision "within 180 days of" receipt of the letter. (*Id.* at 159.) It informed him of the address to send the request, what documents and information to include, and how Reliance would conduct the review. (*Id.*) It also cautioned that a "failure to request a review within 180 days of [his] receipt of [the] letter may constitute a failure to exhaust the administrative remedies available under

[ERISA], and affect [his] ability to bring a civil action under [ERISA]." (*Id.*; *see also id.* at 454–56 (describing the appeal process).)

Cruz emailed Reliance on October 19, 2016, to request a copy of the policy. (*Id.* at 76.) The communication log reflects no further communication from Cruz until his attorney submitted a notice of appeal in August 2018. (*See id.* at 76, 448–49.) Reliance denied the appeal because the 180-day timeframe had expired. (*See id.* at 77.)

## II.    Standard of Review

ERISA affords plan beneficiaries the right to have a federal court review a denial of benefits. 29 U.S.C. § 1132(a)(1)(B). By default, the "standard of review for denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is *de novo*," but "when the benefit plan gives the plan administrator or fiduciary the discretionary authority to determine eligibility for benefits or to construe the terms of the plan, that determination is reviewed for abuse of discretion." *Fitzgerald v. Long-Term Disability Plan of Packard's on the Plaza, Inc.*, No. 11-CV-956 JEC/ACT, 2013 WL 12178732, at *4 (D.N.M. Apr. 4, 2013) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Trujillo v. Cyprus AMAX Minerals Ret. Plan Comm.*, 203 F.3d 733, 736 (10th Cir. 2000)). Where there are time limits on the plan administrator's discretion and the administrator fails to render a timely decision, "the claimant shall be deemed to have exhausted the administrative remedies by operation of law and the 'Firestone deference no longer applies.'" *Id.* (quoting *Rasenack v. AIG Life Ins. Co.*, 585 F.3d 1311, 1315, 1318 (10th Cir. 2009)); *see also* 29 U.S.C. § 2560.503-1(l) (2017). "Thus, the failure to render a final decision in a timely manner warrants a *de novo* standard of review." *Fitzgerald*, 2013 WL 12178732, at *4 (citing *Rasenack*, 585 F.3d at 1315).

Under the *de novo* standard, the Court reviews a denial "to determine whether the

administrator made a correct decision." *Id.* (quoting *Niles v. Am. Airlines, Inc.*, 269 F. App'x 827, 832 (10th Cir. 2008)). In this context, the *de novo* review standard "is whether the plaintiff's claim for benefits is supported by a preponderance of the evidence based on the court's independent review.'" *Id.* (quoting *Niles*, 269 F. App'x at 833). The Court independently weighs "the facts and opinions in . . . [the administrative record] to determine whether the claimant has met [his] burden of showing [he] is disabled within the meaning of the policy." *Id.* (quoting *Orndorf v. Paul Revere Life Ins. Co.*, 404 F.3d 510, 518 (1st Cir. 2005)). The Court does not grant "deference to administrators' opinions or conclusions based on these facts." *Id.* (quoting *Orndorf*, 404 F.3d at 518).

### III.    Analysis

#### A.    Cruz's administrative remedies are deemed exhausted.

"Although ERISA contains no explicit exhaustion requirement, courts have uniformly required that participants exhaust internal claim review procedures provided by the plan before bringing a civil action." *Holmes v. Colo. Coal. for Homeless Long Term Disability Plan*, 762 F.3d 1195, 1203–04 (10th Cir. 2014) (citing *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 105 (2013)). The parties agree that the plan here calls for a two-step review process: the initial benefits determination and the appeal. Cruz engaged in first-level review with Reliance, but he did not timely appeal the unfavorable decision. "Unless [Cruz] can establish some exception to the exhaustion requirement, [his] civil action is barred by [his] failure to engage in a second-level review." *See id.* at 1204.

Courts may excuse a claimant's failure to exhaust in three circumstances: (1) "when resort to administrative remedies would be futile"; (2) "when the remedy provided is inadequate"; and (3) when the claimant is "deemed to have exhausted" his "administrative remedies if a plan has

failed to establish or follow claims procedures consistent with the requirements of ERISA" pursuant to 29 C.F.R. § 2560.503-1(l)[3] (the "deemed-exhausted" provision). *Id.* (citing *McGraw v. Prudential Ins. Co. of Am.*, 137 F.3d 1253, 1263 (10th Cir. 1998)). Cruz claims that exhaustion is warranted under the third exception because Reliance failed to follow ERISA regulations in two ways: first, by failing to render a timely decision under 29 C.F.R. §. 2560.503-1(f)(3)[4]; and second, by failing to provide notice of extensions that satisfied § 2560.503-1(f)(3). (*See* Doc. 125 at 9.)

The Court agrees, and Reliance does not dispute, that its decision was untimely. (*See* Doc. 127-2 at 17.) Paragraph (f)(3) provides that the plan administrator should decide a claim "not later than 45 days after receipt of the claim" with the possibility of up to two 30-day extensions. 29 C.F.R. § 2560.503-1(f)(3). It is undisputed that Reliance mailed the unfavorable decision more than 200 days after Cruz filed his claim, well past the time allotted by § 2560.503-1(f)(3).

Paragraph (f)(3) requires that notices of extension must include information about "the circumstances requiring the extension[,] the date . . .  the plan expects to render a decision[,] . . . the standards on which entitlement to a benefit is based, the unresolved issues that prevent a decision on the claim, and the additional information needed to resolve those issues . . . ." *Id.* Further, "the claimant shall be afforded at least 45 days within which to provide the specified information." *Id.* Reliance admits that any notice of extension it sent to Cruz fell short of the requirements listed in § 2560.503-1(f)(3). (*See* Doc. 127-2 at 17.)

---

[3] At all times relevant to Cruz's claim, 29 C.F.R. § 2560.503-1(l) provided:

> (l) Failure to establish and follow reasonable claims procedures. In the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

[4] Cruz also alleges that Reliance failed to adhere to the time requirements in 29 U.S.C. § 2560.503-1(i)(3)(i). (Doc. 125 at 9.) As paragraph (i) applies to benefits decisions on review (in other words, decisions that have been appealed) and Cruz admits that he did not file a timely appeal, this paragraph is inapposite.

Despite its admitted non-compliance with the time and notice requirements, Reliance argues that its failures were technical defects that did not prejudice Cruz. (*Id.*) The Tenth Circuit in *Holmes* noted that "Courts have . . . been willing to overlook [an] administrator['s] failure to meet certain procedural requirements when the administrator has substantially complied with the regulations and the process as a whole fulfills the broader purposes of ERISA and its accompanying regulations." *Holmes*, 762 F.3d at 1211 (quoting *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 634 (10th Cir. 2003)). To determine whether a procedurally defective decision is nevertheless in "substantial compliance" with the regulations, courts must look at the purpose of ERISA "in the context of other ERISA procedural requirements." *Gilbertson*, 328 F.3d at 635 (citing *Donato v. Metro. Life Ins. Co.*, 19 F.3d 375, 382 (7th Cir. 1994), *disapproved of on other grounds by Diaz v. Prudential Ins. Co. of Am.*, 424 F.3d 635 (7th Cir. 2005) ("In determining whether there has been substantial compliance, the purpose of 29 U.S.C. § 1133 and its implementing regulations, 29 C.F.R. 2560.503-1(f), serves as our guide")). Thus, the Court examines the purpose underlying ERISA's timeliness and notice requirements.

ERISA "calls for . . . a meaningful dialogue between ERISA plan administrators and their beneficiaries." *Id.* (quoting *Booton v. Lockheed Med. Benefit Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997)). The statutorily imposed deadlines are crucial to protect claimants (who may be awaiting benefits to cover daily living expenses) and disincentivize stalling by plan administrators. *See id.* at 635–36. "The deadlines therefore empower the claimant to call a halt to the evidence-gathering process and insist on an up or down decision on the record as it stands." *Id.* at 636. Thus an untimely decision "can only be in substantial compliance with ERISA's procedural requirements if there is an ongoing productive evidence-gathering process in which the claimant is kept reasonably well-informed as to the status of the claim and the kinds of information that will satisfy

the administrator." *Id.* (citing *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 691 (7th Cir. 1992) (plan administrator cannot deny claim based on claimant's failure to provide information if claimant lacked opportunity to provide information because administrator never informed claimant what information was missing)).

Here, the Court finds that Reliance did not substantially comply with ERISA's procedural requirements. The key to this very close call lies in the lack of notice to Cruz regarding Reliance's obligations under ERISA. Critically, there is no record evidence to plausibly establish that Cruz had notice of Reliance's obligation to decide his claim within a certain timeframe. Neither the plan (AR at 1–43) nor any of the notices Reliance sent to Cruz[5] provide notice of Reliance's timeliness requirements under 29 U.S.C. § 2560.503-1(f)(3).[6] Further, ERISA mandates that "[e]very employee benefit plan . . . establish and maintain reasonable procedures . . . ." *Id.* § 2560.503-1(b). "The claims procedures for a plan will be deemed to be reasonable only if . . . [a] description of all claims procedures . . . **and the applicable time frames** is included as part of a summary plan description . . . ." *Id.* § 2560.503-1(b)(2) (emphasis added). Reliance has not provided evidence to show that the summary plan description, which is not identified in the administrative record, contained such a description. Thus, there is no evidence that Cruz had notice of the applicable time frames, and he was prejudiced both by Reliance's failure to so inform him and its failure to adhere to the applicable deadlines. (*See* Doc. 130 at 7.)

Reliance responds that Cruz "cannot claim prejudice" because he "was fully aware of the appeal procedures." (Doc. 127-2 at 17.) But this argument misses the mark. Cruz was *not* aware

---

[5] (*See* AR at 72–73, 75, 112, 118, 121, 123, 124, 135–37, 143, 145, 149–50, 154, 281, 316 (letters or emails dated Mar. 14, 24, & 29, 2016, Apr. 8 & 29, 2016, May 31, 2016, June 15 & 28, 2016, July 5, 2016, & Sept. 7, 2016).)

[6] The Court notes that there is information about these obligations at AR 452–63, but these pages immediately follow correspondence between Reliance and Cruz's counsel regarding his desire to appeal. There is no indication that Cruz received this document prior to 2018.

of the first-level review procedures, and Reliance cannot show that it substantially complied with the statutory purpose of protecting claimants from undue delay and empowering claimants to demand a timely determination. *See Gilbertson*, 328 F.3d at 635–36; *see also McFarlane v. First Unum Life Ins. Co.*, 274 F. Supp. 3d 150, 158–59 (S.D.N.Y. 2017) (narrowly construing tolling provision and discussing November 2000 revisions to ERISA, which indicated that the "Department of Labor believed that the regulation's procedural reforms were 'necessary to guarantee procedural rights to benefit claimants,' and to 'ensure that benefit claimants . . . are provided faster, fuller, and fairer decisions on their benefit claims'") (quoting 65 Fed. Reg. 70,246–47 (Nov. 21, 2000)).

Finally, Reliance argues that Cruz has waived his right to excusal under § 2560.503-1(l) because he waited for the first-level determination rather than filing a lawsuit under the "deemed exhausted" provision.[7] (*See* Doc. 127-2 at 16–17.) In support, Reliance cites an out-of-district case that held, "if the plan administrator fails to follow the appeals timeline designated by the plan, a claimant is entitled to bring suit before the administrator decides his appeal." (*Id.* (citing *Puzzo v. Metro. Life Ins. Co.*, Civ. No. 15-3190 FLW/LHG, 2016 WL 1224029, at *4 (D.N.J. Mar. 29, 2016)).) Again, however, Reliance fails to cite to any "timeline designated by the plan." Thus the Court cannot overlook Cruz's disadvantage in this case: he was unaware that he *could* file a lawsuit because Reliance had not provided the requisite notice. Any assertion of waiver falls short.

---

[7] The Court notes at least three opinions that would support a finding of waiver where Cruz's attorney filed an appeal before filing a lawsuit. *See Dragus v. Reliance Standard Life Ins. Co.*, 882 F.3d 667, 672 (7th Cir. 2018) (finding that if claimant "wanted to pursue available remedies for Reliance's untimely denial, he should have done so when the issue arose"); *Jacobson v. SLM Corp. Welfare Ben. Plan*, No. 1:08-CV-0267DFHDML, 2009 WL 2841086, at *5 (S.D. Ind. Sept. 1, 2009) (finding that claimant waived her remedies under § 2560.503-1(l)  by pursuing an appeal instead of filing a lawsuit based on the plan's procedural defects); *Wilson v. Aetna Life Ins. Co.*, No 815CV752-MAD-CFH, 2016 WL 5717370, at *9 (N.D.N.Y. Sept. 30, 2016) (finding that claimant, "who was represented by counsel, did not take advantage of [§ 2560.503-1(l) by immediately filing a lawsuit upon expiration of the statutory time limit] and instead waited until" the plan had rendered an adverse decision to file suit) (citations omitted). While the Court notes the logic of these conclusions, the out-of-district decisions are non-binding and neither party cited to them.

Consequently, Cruz is deemed to have exhausted his administrative remedies, and the Court will review his benefits claim.

### B.   The Court will apply a *de novo* standard of review to Cruz's claim.

Reliance asserts that it has discretionary authority to determine Cruz's eligibility for benefits and that the Court should review the denial under the arbitrary and capricious standard of review. (Doc. 127-2 at 1.) Yet, even if the plan gives discretion to the plan administrator to determine eligibility,[8] Cruz argues that the Court should review the decision *de novo* because Reliance violated ERISA regulations in its first-level review. (Doc. 130 at 8–9 (citing *Fitzgerald*, 2013 WL 12178732, at *6–7).) Cruz's position is supported by Tenth Circuit precedent.

"A plan administrator must not only 'be given discretion by the plan, but the administrator's decision in a given case must be a valid exercise of that discretion.'" *Fitzgerald*, 2013 WL 12178732, at *7 (quoting *Rasenack*, 585 F.3d 1311 at 1315 (applying de novo standard of review to the plaintiff's claim for benefits); *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 797, n.5 (10th Cir. 2010) (applying *de novo* standard of review where administrator issued untimely decision on appeal and never formally sought an extension)). The *LaAsmar* court's conclusion was "bolstered by the Department of Labor's indication, in revising §2560.503-1(l), that it intended 'to clarify that the procedural minimums of the regulation are essential to procedural fairness and that a decision made in the absence of the mandated procedural protections *should not be entitled to any judicial deference*.'" 605 F.3d at 799 (quoting 65 Fed. Reg. 70246-01, 70255 (2000)).

In *Rasenack*, the plan provided for a first-level review of no longer than 180 days, and an

---

[8] While Cruz does not concede that the plan gives Reliance discretionary authority (*see* Doc. 130 at 8), Tenth Circuit authority supports Reliance's interpretation of the law. *See Hodges v. Life Ins. Co. of N. Am.*, 920 F.3d 669, 676 n.5 (10th Cir. 2019) (citations omitted).

appeal of no longer than 120 days. 585 F.3d at 1314. In contravention of the plan, the first-level review took 16 months and the appeal almost 8 months. *See id.* Because the administrator failed to render a timely final decision, the Tenth Circuit applied *de novo* review. *See id.* at 1316. Similarly, here, Reliance failed to render a timely decision on Cruz's first-level review; thus, its determination is not entitled to deference. *See LaAsmar*, 605 F.3d at 799. Accordingly, the Court will apply the *de novo* standard of review.

### C.   The record does not make clear whether Cruz's Regular Occupation should be classified as a Physician or a Surgeon.

Reliance based its decision on a finding that Cruz's Regular Occupation was that of a Physician. (*See* AR at 156.) Cruz claims that this was an error and advances a two-pronged argument. (Doc. 125 at 12.) First, he asserts that Reliance erred in failing to define what a Physician is and describing what material duties it entailed. (*See id.*) Second, he argues that Reliance erred in finding that he was a Physician rather than a Surgeon. (*Id.* at 14.)

Reliance asserts that the applicable definition of "Regular Occupation" is "the occupation the Insured is routinely performing when Total Disability begins." (Doc. 127-2 at 20 (quoting AR at 11).) It states that it looks at the "occupation as it is normally performed in the national economy, and not the unique duties performed for a specific employer or in a specific locale." (*Id.* (quoting AR at 11).) Neither party addresses that this definition was apparently superseded by a rider applicable to Class 2 physicians like Cruz. (*See* AR at 38; *see also id.* at 7 (defining "Class 2" as "Physician"); Doc. 127-2 at 5 (noting that Material Fact 21, identifying Cruz as belonging to Class 2, is uncontroverted).) The rider defines Regular Occupation for Physicians as "the Insured's general or sub-specialty in the practice of medicine during the [36] months immediately before his/her Total Disability begins and for which he/she is certified by the American Board of Medical Specialties." (AR at 38.) In a March 21, 2016 letter from Reliance to Lovelace, Reliance stated

that this latter definition applied to Cruz. (*Id.* at 196.)

Cruz has consistently asserted that he is a surgeon. (*See*, *e.g.*, *id.* at 72, 172.) In an internal note dated March 21, 2016, a Reliance representative states: "per [policyholder] job description, claimant is a [P]hysician General Practice. Per the Ed/Occ form completed by the claimant, he is a Surgeon. Policyholder should be contacted to clarify." (*Id.* at 69.) Reliance contacted Lovelace to obtain clarification on March 21, 2016. (*Id.* at 196.) Lovelace informed Reliance that while it submitted a job description that was "a general description for all of [its] providers[,]"[9] it also provided a "fitness for duty letter [that] lists his essential functions as a surgeon." (*Id.* at 196; *see also id.* at 191–95.) The Court cannot find the "fitness for duty letter" in the record.

Moreover, another internal note recorded by a Reliance representative on August 25, 2016, states: "Per subsequent [job description] clarification from [policyholder], [occupational data] has been assigned for Surgeon. See [Dictionary of Occupational Titles (DOT)] tab and scanned DOT claim doc for details." (*Id.* at 69.) The record contains DOT details for the position of Surgeon, DOT Code 070.101-094 (*see id.* at 375–77), but no similar DOT details for the position of Physician, General Practice.[10] There is no evidence in the record that Cruz is certified as a Surgeon by the American Board of Medical Specialties, as required by the rider's definition of Regular Occupation.

Notably, Dr. Roy Sanders, who completed a Peer Review Report, recorded Cruz's employment as a General Surgeon. (*See id.* at 441.) On the other hand, Dr. Sanders noted that Cruz's condition in March and April "would have significantly functionally impaired him from

---

[9] The "Summary of Job Duties" this email presumably refers to includes the following: "Performs medical examinations, evaluations, assessments, diagnoses, and treatment to hospital inpatients. Prescribes pharmaceuticals, other medications, and treatment regimens as appropriate to assessed medical conditions. Directs and coordinates the patient are [sic] activities of nursing and support staff as required." (AR at 191.)

[10] Physician, General Practice is listed as DOT Code 070.101-022. *See* DOT, https://occupationalinfo.org/07/070101022.html (revised May 26, 2003).

work in a high stress position as a practicing physician." (*Id.* at 445.) It does not appear that Dr. Sanders reviewed either the DOT details for Surgeon or the employer's job description or fitness for duty letter when he rendered his opinion. (*See id.* at 440–41 (listing the "data reviewed").)

Curiously, Cruz does not discuss any of this evidence or seek to supplement the record with evidence that he was board certified. Instead, he discusses dictionary definitions of "physician" and "surgeon." (*See* Doc. 125 at 13–14.) He offers no authority to support a finding that dictionary definitions are objectively reasonable tools to define the material duties of a Regular Occupation, particularly when the record contains both job descriptions and DOT codes. *See*, *e.g.*, *Gallagher v. Reliance Standard Life Ins. Co.*, 305 F.3d 264, 272–73 (4th Cir. 2002) (finding that plan's use of DOT description was "objectively reasonable" in defining material duties where the description involved comparable duties to claimant's actual job duties).

The lack of a clear answer here hinders the Court on *de novo* review, where it must consider whether Cruz's limitations prevented him from performing the material duties of his Regular Occupation.

### D.     The Court directs the parties to submit additional briefing.

Reliance asserts early in its response brief that "whether reviewed *de novo* or under the arbitrary and capricious standard, the denial of benefits claim should be upheld . . . ." (Doc. 127-2 at 2.) In the substantive portion of its brief, however, Reliance assumed the Court would apply the arbitrary and capricious standard. (*Id.* at 19.) The Court will review Cruz's claim under the *de novo* standard, and it will give Reliance the opportunity to submit another brief with that standard in mind. *See Fitzgerald*, 2013 WL 12178732, at *7 (allowing Reliance to submit additional briefing on the *de novo* standard where Reliance failed to brief that standard originally). Further, the Court seeks the parties' input on whether Cruz's Regular Occupation should be defined under the rider,

13

and whether that would change Reliance's determination of his Regular Occupation to that of a Surgeon. (*See* AR at 38.) Finally, the Court directs Reliance to explain what material duties it considered when it decided that Cruz's limitations were not totally disabling.

THEREFORE,

**IT IS ORDERED** that Cruz's Motion for Summary Judgment and Opening Brief on ERISA Claim (Doc. 125) is **GRANTED IN PART**, in that the Court finds Cruz's administrative remedies are deemed exhausted and that a *de novo* standard of review governs his claim. The Court will defer ruling on Cruz's request for an award of benefits pending additional briefing from the parties;

**IT IS FURTHER ORDERED** that Reliance's Cross-Motion for Summary Judgment on the ERISA Administrative Record (Doc. 127-2) is **DENIED**; Reliance may re-file its cross-motion in subsequent briefing;

**IT IS FURTHER ORDERED** that Reliance shall submit a supplemental brief (no more than 20 pages) within **14 days** of entry of this Opinion. Cruz shall submit his supplemental response (no more than 20 pages) within **14 days** of Reliance's brief. If Reliance's brief includes a cross-motion, it may file a reply brief (no more than 12 pages) within **14 days** of Cruz's brief.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE