**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

ELDIE L. CRUZ, M.D.,

    Plaintiff,

v.   No. CIV 18-0974 RB/SCY

RELIANCE STANDARD LIFE INSURANCE COMPANY,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff Eldie Cruz, M.D. seeks judicial review of Reliance Standard Life Insurance Company's (Reliance) decision denying him long-term disability (LTD) benefits under an employer-sponsored insurance plan. Cruz's claim arises under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461.[1] In a previous Opinion, the Court found that while Cruz did not timely appeal Reliance's decision, his administrative remedies are deemed exhausted and a *de novo* standard of review governs his claim. The parties submitted supplemental briefs on the claim, and this matter is now ready for decision. Having performed a *de novo* review of the administrative record and considering the parties' submissions and the applicable law, the Court determines that Reliance's administrative decision should be affirmed.

**I.  The Court will review this matter under the *de novo* standard.**

In its December 9, 2020 Memorandum Opinion and Order, the Court found that due to Reliance's failure to render a timely final decision on Cruz's claim, "its determination is not

---

[1] Reliance originally filed a motion for summary judgment (Doc. 127-2), which the Court denied in a previous opinion (Doc. 136). The Court stated that Reliance would be allowed to "re-file its cross-motion in subsequent briefing." (*Id.* at 14.) Reliance did not style its supplemental brief as a cross-motion for summary judgment (*see* Doc. 137), but it filed a reply brief and asked the Court to "uphold the benefit decision" and to "consider its prior brief as asserting a cross-motion for summary judgment." (*See* Doc. 139 at 1 n.1.) Because Reliance now requests the same relief as it did in its original motion for summary judgment, the Court will consider it as a dispositive motion on the merits of the claim.

1

entitled to deference" and "the Court will apply the *de novo* standard of review." (Doc. 136 at 11 (discussing *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 787, 799 (10th Cir. 2010)).) Accordingly, the Court gives no deference "to the administrator's interpretation of the plan language . . . and applies the normal rules for contract interpretation." *Padilla v. UNUM Provident*, No. CV 03-1444 MCA/WDS, 2007 WL 9709945, at *4 (D.N.M. Mar. 26, 2007) (quoting *Orndorf v. Paul Revere Life Ins. Co.*, 404 F.3d 510, 517 (1st Cir. 2005)). The Court independently weighs all "facts and opinions in . . . [the administrative] record to determine whether the claimant has met [his] burden of showing [he] is disabled within the meaning of the policy." *Id.* (quoting *Orndorf*, 404 F.3d at 518).

"When applying a *de novo* standard in the ERISA context, the role of the court in reviewing the denial of benefits is to determine whether the administrator made a correct decision." *Fitzgerald v. Long-Term Disability Plan of Packard's on the Plaza, Inc.*, No. 11-CV-956 JEC/ACT, 2013 WL 12178732, at *4 (D.N.M. Apr. 4, 2013) (quoting *Niles v. Am. Airlines, Inc.*, 269 F. App'x 827, 832 (10th Cir. 2008)); *see also Gilbertson v. Allied Signal, Inc.*, No. CV 99-1065 LH/LFG, 2005 WL 8163839, at *5 (D.N.M. June 30, 2005), *aff'd sub nom.* 172 F. App'x 857 (10th Cir. 2006) ("In conducting a *de novo* review, the Court gives no deference and no presumption of correctness to the administrator's decision; rather, the Court 'simply decides whether . . . it agrees with the decision under review.'") (quotation and citation omitted). "The standard 'is not whether "substantial evidence" or "some evidence" supported the administrator's decision; it is whether the plaintiff's claim for benefits is supported by a preponderance of the evidence based on the court's independent review.'" *Fitzgerald*, 2013 WL 12178732, at *4 (quoting *Niles*, 269 F. App'x at 833).

Although the parties moved for summary judgment, the normal standard for motions brought under Federal Rule of Civil Procedure 56 does not apply. *See Padilla*, 2007 WL 9709945, at *4. Instead, "summary judgment is merely a vehicle for deciding the case; the factual determination of eligibility for benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in its favor." *LaAsmar*, 605 F.3d at 796 (quoting *Bard v. Boston Shipping Ass'n*, 471 F.3d 229, 235 (1st Cir. 2006)).

## II. The Court denies Cruz's request to admit new evidence.

"A party seeking to introduce evidence from outside the administrative record bears a significant burden in establishing that he may do so." *Jewell v. Life Ins. Co. of N. Am.*, 508 F.3d 1303, 1309 (10th Cir. 2007). The Tenth Circuit set out a four-prong test (the *Hall* test) that a party must meet before a court may accept extra-record evidence. The moving party has the burden to show that the evidence: (1) is "necessary to the district court's de novo review;" (2) "could not have been submitted to the plan administrator at the time the challenged decision was made;" (3) is not "[c]umulative or repetitive;" nor (4) that it "is simply better evidence than the claimant mustered for the claim review." *Id.* (quoting *Hall v. UNUM Life Ins. Co. of Am.*, 300 F.3d 1197, 1203 (10th Cir. 2002)). Even if the party meets all four prongs of the *Hall* test, "district courts are not required to admit additional evidence when these circumstances exist because a court 'may well conclude that the case can be properly resolved on the administrative record without the need to put the parties to additional delay and expense.'" *Id.* (quoting *Hall*, 300 F.3d at 1203).

Cruz seeks to admit three extra-record exhibits: (1) a certification in the specialty of surgery from the American Board of Surgery, Inc. (Doc. 138-1 at 1); (2) a December 28, 2020 medical opinion in the form of a letter from non-examining physician R.L. Romanik, M.D., P.C. (*id.* at 2–7); and (3) progress notes from treating physician Sharon Cooperman, M.D., dated February and

April 2020 (*id.* at 8–15). Cruz submitted the surgery certification because the Policy requires such proof under the rider defining "Regular Occupation" for Physicians. (*See* AR at 38; *see also* Doc. 136 at 12.) Reliance has stipulated, though, that Cruz should be classified as a surgeon. (*See* Docs. 137 at 1–2; 139 at 2 n.2.) Thus, it is not necessary to supplement the record with the certificate.

With respect to the remaining two exhibits, Cruz fails to address *Hall*'s four prongs. (*See* Doc. 138.) Instead, he contends the new evidence should be admitted because: (1) Reliance "incorrectly believes that [his] disability is solely related to substance abuse[;]" (2) there is a "complex medical issue" regarding his disability; and (3) there is "an interpretation issue of 'Regular Occupation' under the policy regarding [his] occupation as a surgeon." (*Id.* at 2–3 (discussing *Hall*, 300 F.3d at 1203; *Ray v. Unum Life Ins. Co. of Am.*, 314 F.3d 482, 488 (10th Cir. 2002)).) The Court will analyze his argument pursuant to the *Hall* test.

    **A.**    **The evidence is not necessary.**

Neither of the two exhibits are necessary for *de novo* review. The *Hall* court offered several examples of "exceptional circumstances . . . that might militate in favor of a finding of necessity." *Jewell*, 508 F.3d at 1309 (discussing *Hall*, 300 F.3d at 1203). One example may occur where the claim "require[s] consideration of complex medical questions . . . ." *Id.* (quoting *Hall*, 300 F.3d at 1203). Cruz summarily argues that Dr. Romanik's report reveals a complex medical question as he diagnosed bipolar disorder, which is not identified as an active diagnosis in the record. (Doc. 138 at 4; *see also* Doc. 138-1 at 4.) Cruz further contends that because Reliance did not have information regarding this diagnosis nor its effect on his Regular Occupation as a surgeon, this information is helpful and necessary to this Court's *de novo* review. (*See* Doc. 138 at 4.)

Yet, Dr. Romanik's opinion does not provide any useful information that would assist the Court in determining the relevant question: whether Cruz can establish that his condition rendered

him Totally Disabled under the Policy, that is, "during the Elimination Period and thereafter [he could] not perform the material duties of his . . . Regular Occupation . . . ." (Administrative Record[2] (AR) at 11.) Although Dr. Romanik concludes that Cruz's symptoms "can be explained by a diagnosis of bipolar disorder" and opines that Cruz would not be "fit to be a surgeon . . . without appropriate treatment[,]" Dr. Romanik offers no specific, objective findings of limitations during the relevant period to explain how Cruz was unable to perform the duties of a surgeon. (*See* Doc. 138-1 at 3–4.) *Cf. Loughray v. Hartford Grp. Life Ins. Co.*, 366 F. App'x 913, 928 (10th Cir. 2010) (noting that a neurological exam and other examinations did not establish "objective findings that would support [the claimant's] diagnoses or that they were disabling conditions"). In other words, Dr. Romanik's opinion does not provide any "objective evidence . . . to confirm the *disabling severity* of" Cruz's bipolar disorder. *See Meraou v. Williams Co. Long Term Disability Plan*, 221 F. App'x 696, 703 (10th Cir. 2007).

The same is true for Dr. Cooperman's progress notes. These notes establish that Dr. Cooperman evaluated Cruz for chronic traumatic encephalopathy (CTE). (*See* Doc. 138-1 at 8.) She opines that "[i]t is possible that [Cruz's] bipolar disorder is the result of his multiple head injuries, as" this disorder can be "secondary to [CTE]." (*See id.* at 13.) She reviews exam results that reveal conflicting evidence of CTE[3] and concludes that "[a]t present [Cruz] does not present with symptoms which require treatment other than bipolar disorder." (*Id.*) While Dr. Cooperman's progress notes document Cruz's subjective complaints of symptoms (*e.g.*, memory loss, cluster headaches, episodes of severe anger, etc.) (*see id.* at 8), the fact that Cruz reported them in 2020

---

[2] Documents 124-1–9 contain the sealed administrative record. The Court cites the record's internal pagination, rather than the CM/ECF document number and page.

[3] A Moca exam revealed "mild cognitive impairment . . . consistent with multiple head injuries and [CTE], but [a] neurological exam [was] unremarkable," an "MRI of the brain [did] not strongly suggest [CTE], and [an] EEG was normal." (Doc. 138-1 at 13.)

5

make them largely irrelevant and unnecessary to the Court's analysis of whether he was Totally Disabled five years prior.

### B. Cruz has not established that the evidence could not have been submitted to Reliance earlier.

Cruz does not attempt to explain why he did not submit further evidence of a bipolar disorder diagnosis to Reliance. (*See* Doc. 138.) The record shows that on April 23, 2016, Tiffany Pendleton, D.O. assessed a history of bipolar disorder in a Psychiatric Progress Note. (AR at 261.) On May 12, 2016, another provider noted a "question of bipolar." (AR at 259.) As Cruz had notice of this potential diagnosis, he could have pursued further medical treatment to submit to Reliance for consideration. The Court is not inclined to admit this new evidence five years after the fact.

### C. The evidence is not cumulative or repetitive, but Cruz fails to establish that it is not "simply better."

"Evidence is cumulative if its probative effect is already achieved by other evidence in the record; that is, if the small increment of probability it adds may not warrant the time spent in introducing it." *Jewell*, 508 F.3d at 1314 (quotation marks and citation omitted). While Cruz makes no argument under the third prong, the Court finds that the new evidence is not cumulative or repetitive.

To meet the fourth prong, "[n]ew evidence must be of a significantly different type than existing evidence . . . ." *Id.* Again, Cruz makes no argument here. The Court agrees that the newly submitted evidence is different—Cruz did not claim disability due to bipolar disorder—but this alone is not enough to meet his burden to show that admission is appropriate. In sum, because Cruz has not met the *Hall* test for admissibility, the Court will deny his request to supplement the record.

### III. Cruz fails to establish that he was Totally Disabled within the meaning of the Policy.

To be entitled to LTD benefits, Cruz must show that he was unable to "perform the material

duties of his Regular Occupation" during the Elimination Period and thereafter. (*See* AR at 11.) The Court has performed a *de novo* review of the record and finds that Cruz has not established Total Disability for the required period.

### A. Cruz's Regular Occupation and Material Duties

To begin, the Court looks at the responsibilities of Cruz's Regular Occupation. The benefit denial letter indicates that Reliance considered Cruz to be a physician, rather than a surgeon. (*See id.* at 156 (noting that although "the claim file reveals that [Cruz was] a Surgeon[,]" Reliance determined that his "Regular Occupation was that of a Physician").) Reliance now acknowledges that this was an error, and Cruz's Regular Occupation is indeed a surgeon. (*See* Doc. 137 at 2.) The Dictionary of Occupational Titles (DOT) details the position of Surgeon, Code 070.101-094, as follows:

> Performs surgery to correct deformities, repair injuries, prevent diseases, and improve function in patients: Examines patient to verify necessity of operation, estimate possible risk to patient, and determine best operational procedure. Reviews reports of patient's general physical condition, reactions to medications, and medical history. Examines instruments, equipment, and surgical setup to ensure that antiseptic and aseptic methods have been followed. Performs operations, using variety of surgical instruments and employing established surgical techniques appropriate for specific procedures. . . .

*See Code 070.101-094*, (*Surgeon*), DOT, available at https://occupationalinfo.org/07/070101094.html (last revised May 26, 2003).

### B. Administrative Record Evidence

On November 10, 2015, Cruz self-admitted to a 30-day drug rehabilitation program at the Florida Center for Recovery due to substance and alcohol abuse. (*See* AR at 156, 209.) Notes from a psychiatric evaluation reveal that Cruz reported "a history of anxiety and recent paranoia (appears to be isolated)." (*Id.* at 209.) Cruz stated that "[t]he first time he experienced any paranoia was a few weeks before when someone hacked [his] bank account and email." (*Id.*) He later hid in his

office because he "thought people were chasing" him. (*Id.*) Cruz admitted to "using cocaine several times per week and on occasion [would] drink up to 10 drinks in a setting." (*Id.*) He was discharged from the facility on December 10, 2015, with a "fair/guarded" prognosis. (*Id.* at 201.) His diagnoses on discharge included cocaine use disorder; generalized anxiety disorder; cyclothymic disorder;[4] and alcohol use disorder, severe. (*Id.*) His provider prescribed 50-100mg of Seroquel[5] daily and instructed him to make an appointment with his primary care physician. (*Id.* at 217.)

Cruz had a recurrence of paranoid thoughts on December 12, 2015. (*See id.* at 321.) He checked into UNM Psychiatric Center because he felt that someone was trying to poison or hurt him and that someone was following him. (*Id.*) Cruz thought his in-laws "may somehow be involved in the situation." (*Id.* at 342.) He stated "that the book . . . he was carrying was telling him through the text that he needed to get treatment." (*Id.* at 321.) He reported an anxious mood and "ongoing paranoid ideation." (*Id.* at 321–22.) On December 13, 2015, Cruz reported that he was "no longer having paranoid thoughts about his family" and asked to be discharged. (*Id.* at 337.) His provider "encourage[d] him to stay one more day" for observation "in case the thoughts" returned. (*Id.*) Cruz was discharged on December 14, 2015, with diagnoses of psychosis, not elsewhere classified; opiate use disorder, moderate with psychosis; and stimulant (cocaine) use disorder, moderate with psychosis. (*Id.* at 342.) Cruz's Seroquel dose was increased "to 100mg [at

---

[4] Cyclothymic disorder "is a rare mood disorder" that "causes emotional ups and downs, but they're not as extreme as those in bipolar I or II disorder." *Cyclothymia (cyclothymic disorder)*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/cyclothymia/symptoms-causes/syc-20371275 (last visited Feb. 11, 2021).

[5] Seroquel is an anti-psychotic medication "used to treat certain mental/mood conditions (such as schizophrenia, bipolar disorder, sudden episodes of mania or depression associated with bipolar disorder). . . . It may also improve . . . mood, sleep, appetite, and energy level." *Seroquel*, WebMD, https://www.webmd.com/drugs/2/drug-4718/seroquel-oral/details (last visited Feb. 11, 2021).

bedtime] to target psychosis." (*Id.* at 343.) The provider opined that "[m]ost likely [Cruz's] psychosis [was] attributed to the recent drug use and various psychosocial stressors."[6] (*Id.*)

In late December 2015, Cruz began treatment with Johnnie Vigil, M.D., who specializes in addiction medicine at Epoch Behavioral Healthcare. (*See, e.g.*, *id.* at 109, 238, 293.) In February 2016, he began counseling with Denise D'Coda, Licensed Marriage and Family Therapist. (*See, e.g.*, *id.* at 291, 307.) Beginning in February 2016 and continuing through at least June 2016, Cruz regularly attended group therapy with New Mexico Monitored Treatment Program and a 12-step program through Alcoholics Anonymous. (*See id.* at 291–315.) During this time, Ms. D'Coda consistently marked that Cruz was "making satisfactory progress toward achievement of [his] treatment goals" without "indication of behavioral or chemical relapse." (*Id.* at 295–96, 299–300, 303–04, 307–08, 311–12.)

On January 12, 2016, Cruz told Dr. Vigil that he felt good and had a good mood with no anxiety and ok sleep. (*Id.* at 268.) On February 4, 2016, Cruz reported increased anxiety. (*Id.* at 265.) He stated that he "stopped meds [and] thinks Wellbutrin makes him too anxious." (*Id.*) Dr. Vigil increased his Zoloft dosage, decreased his Wellbutrin dosage, and discussed medication compliance. (*Id.*) On February 8, 2016, Cruz reported to his primary care physician that he felt "well without any specific complaints." (AR at 246.) His prescriptions were recorded as Seroquel 100mg, Zoloft 100mg, and Wellbutrin 150mg. (*Id.*)

On March 11, 2016, Dr. Vigil completed a physician's statement. (*Id.* at 176–77.) He listed diagnoses of alcohol use disorder; stimulant use disorder; and substance-induced depressive disorder. (*Id.* at 176.) He opined that Cruz was moderately limited in his ability to perform complex and varied tasks and would take less than four weeks to achieve maximum medical improvement.

---

[6] The provider also noted that Cruz's "mother reported that [Cruz] has had a brief psychotic episode while in . . . medical school." (AR at 343.)

(*Id.* at 177.) He stated that when Cruz attained "maximum medical improvement," his functional capacity would be "improved over current but not full." (*Id.*)

By April 23, 2016, Cruz reported that he had discontinued taking his Zoloft due to side effects, he rarely used his Seroquel, and Wellbutrin was not listed as a current medication. (*Id.* at 261.) He stated that he had not used substances since November 2015, things were going "okay," his mood was 2/10 with 10 being the worst, and he did not have depression. (*Id.*) He reported "[s]ome situational anxiety" due to "worr[y] about not working, [the] process of applying for disability, and [two] kids." (*Id.*) He felt "somewhat overwhelmed about the future and when he will work again." (*Id.*) Cruz stated that he had not used alcohol or illicit substances since November 2015, and he had not had psychotic symptoms since January 2016. (*Id.*) He denied panic attacks, cravings, auditory or visual hallucinations, paranoia, mania, or hypomania. (*Id.*) He felt "better overall" and reported attending 12-step meetings, the Monitored Treatment Program, group therapy, and individual therapy. (*Id.*) His provider noted that Cruz would "not start on psychotropic [medications] at this time since [he is] doing fairly well without but [will] continue to monitor closely." (*Id.*) She diagnosed unspecified anxiety disorder; psychosis and mood disorder due to substance use; alcohol use disorder, early remission; and cocaine use disorder, early remission. (*Id.*) She also noted a history of bipolar disorder. (*Id.*)

Cruz called Reliance on May 3, 2016, and expressed that "he would like to [return to work part-time] in some capacity" but would need "clearance to work with patients again . . . ." (*Id.* at 72.) He asked "if he could do other work, such as medical reviews for insurance companies." (*Id.*) The Reliance representative explained the plan's Rehabilitative Employment and Work Incentive provisions. (*Id.*; *see also id.* at 31, 84.)

10

On May 12, 2016, Cruz reported to Dr. Vigil that he was not drinking or using illicit substances and had some anxiety about going back to work. (*Id.* at 259.) He reported that he was taking Seroquel but not Zoloft. (*Id.*) Dr. Vigil assessed alcohol use disorder; cocaine use disorder, in early remission; and anxiety disorder. (*Id.*) He also noted a "question of bipolar." (*Id.*)

On July 11, 2020, Ms. D'Coda noted that Cruz was "doing well, feeling better," and "internally motivated." (*Id.* at 311–12.)

Reliance engaged Roy Sanders, M.D., board-certified in psychiatry with a sub-specialty certificate in addiction psychiatry, to review Cruz's medical records and provide a Peer Review Report. (*See id.* at 154, 392–96.) Dr. Sanders thoroughly summarized Cruz's records and opined that Cruz's "most appropriate diagnoses that are supported by the history and records are Substance Use Disorder, Alcohol and Cocaine[,] and Substance Use Induced Psychosis with paranoia." (*Id.* at 393–94.) Dr. Sanders noted that Cruz "was admitted to inpatient treatment and stabilized with low dose antipsychotic medication management among other treatments." (*Id.* at 394.) He opined that "[t]he evidence provided does not support functional psychiatric impairment at this time. . . . [Cruz] is doing well and is stable as well as engaged in treatment." (*Id.* at 395.) He later clarified[7] that Cruz "was impaired from work activities until May 1, 2016[,]" and after that date, "there is no indication that he could not have returned to work on a full time basis without restriction." (*Id.* at 445.) He explained:

> Based on the records [Cruz] continued through December 2015 to have significant psychiatric illness including paranoia that would have precluded any work. He had an inpatient stay during that month secondary to paranoia. [His] anxiety persisted throughout the month of December. Through January and February according to the records his symptoms persisted with continued anxiety and the need for medication changes and focus on his new sobriety. The notes beginning in March and April reflect continued group therapy engagement and work on sobriety and managing anxiety that would have significantly functionally impaired him from

---

[7] Dr. Sanders produced two addendums to his Peer Review Report on request from Reliance. (*See* AR at 408, 413–14, 439, 444–45.)

>work in a high stress position as a practicing physician. By the end of April he appears to have been significantly improved and by May 1, 2016[,] there is no indication that he could not have returned to work on a full time basis without restriction. By that time he was more stable. Medications had been weaned. He had ongoing support and was still sober and being monitored by the state licensing agency.

(*Id.*) He opined that as of May 1, 2016, "[t]here is no suggestion that [Cruz] has a cognitive impairment that would keep him from engaging in work that is equivalent to his level of training." (*Id.* at 413.)

### C. Cruz has not shown that his limitations precluded him from performing the material duties of his Regular Occupation throughout the Elimination Period.

To be eligible for LTD benefits, Cruz must show that he met the definition of Total Disability under the Policy, which is defined as being unable to "perform the material duties of [one's] Regular Occupation" both "during the Elimination Period and thereafter . . . ." (AR at 11.) Cruz does not specifically reference any of his material duties as a surgeon. (*See* Docs. 125; 138.) Instead, he summarily argues that he was unable "to practice the art of healing and/or manual operations required by medicine during and through the elimination period" due to "extreme mental illness with psychotic symptoms." (Doc. 125 at 15 (citations omitted); *see also* Doc. 138 at 6 (asserting that Cruz "was suffering from bipolar disorder and could not work as a surgeon").) As explained below, Cruz does not demonstrate that his limitations or restrictions prevented him from performing his duties as a surgeon. Consequently, the Court finds that he has failed to meet his burden.

#### 1. Cruz fails to show evidence of "psychosis," paranoia, or hallucinations.

Cruz begins by arguing that he was "still experiencing anxiety and 'thought content' of [audio and visual hallucinations] or paranoia" on April 23, 2016. (Doc. 125 at 16 (citing AR at 261); *see also* Doc. 138 at 5–6.) Cruz misinterprets the provider's notes. Regarding the Mental

Status Examination portion of the visit, the provider wrote "Ø AH/VH or paranoia" in a section entitled "Thought content (hallucinations, delusions, etc.)." (AR at 261.) The Court interprets the Ø symbol to mean that Cruz stated he was *not* experiencing auditory or visual hallucinations or paranoia. *See, e.g.*, *Medical Abbreviations & Symbols*, available at https://www.azd.uscourts.gov/ sites/default/files/documents/%5b3%5d%20Medical%20Abbreviations%20and%20Symbols.pdf (dated Aug. 27, 2014) (defining Ø as "No/None"); *see also Hunt v. United States*, No. 1:18-CV-1006-SWS-MLC, 2020 WL 4597282, at *1 (D.N.M. May 8, 2020) (defining AH/VH as auditory hallucinations/visual hallucinations).

Cruz asserts that at the same appointment, his provider assessed bipolar disorder, stimulant and alcohol use disorder, and psychosis. (Doc. 125 at 16 (citing AR at 261).) This is not entirely accurate, as the provider wrote that Cruz presented with a "history of" these conditions. (*See* AR at 261.) *See also h/o*, The Free Dictionary, available at https://medical-dictionary. thefreedictionary.com/h%2Fo (last visited Feb. 11, 2021) (defining h/o as "history of"). In other words, there is no evidence that Cruz was experiencing psychosis[8] at that time or at any time since January 2016. (*See, e.g.*, AR at 261 (Apr. 23, 2016 provider note that Cruz denied "any further psychotic symptoms or psychosis since 1/16").) Instead, she recorded Cruz's report that "things are going 'okay'" and that he denied problems with depression, rated his mood as a 2/10 (where 10 is the worst), and only complained of "some situational anxiety." (*Id.*) Cruz stated that he rarely used Seroquel and had discontinued use of Zoloft due to side effects. (*Id.*) He had not used alcohol or drugs since November 2015, denied cravings, and was "doing well" without both. (*Id.*) Cruz denied psychotic symptoms, psychosis, panic attacks, mania, and hypomania. (*Id.*) He felt "better

---

[8] "[T]he [American Psychiatric Association] and the World Health Organization define psychosis narrowly by requiring the presence of hallucinations . . . , delusions, or both hallucinations without insight and delusions." David B. Arciniegas, MD, *Psychosis*, 3 Behavioral Neurology & Neuropsychiatry, 715–36 (June 2015), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4455840/ (citations omitted).

13

overall." (*Id.*) In sum, this record portrays a much less dire picture than the one Cruz paints.

### 2. Cruz fails to show limitations or restrictions that show he could not perform his material duties as a surgeon.

Even if the provider *had* assessed bipolar disorder, a diagnosis Cruz maintains should establish disability (*see* Docs. 125 at 18; 138 at 6–7), the Court declines to find that Cruz meets his burden on the basis of his diagnoses alone. A diagnosis by itself does not provide objective evidence to support a finding that Cruz's restrictions and limitations prevented him from performing his material duties as a surgeon. *See Atkins v. SBC Commc'ns, Inc.*, 200 F. App'x 766, 773 (10th Cir. 2006) (where claimant claimed disability due to depression and anxiety, Tenth Circuit found that "it was not unreasonable for [a plan] to deny benefits based on the lack of objective evidence") (citing *Johnson v. Metro. Life Ins. Co.*, 437 F.3d 809, 813 (8th Cir. 2006)); *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1099 (10th Cir. 1999) (finding that plan did not "act[] arbitrarily by finding that there was a lack of objective evidence of total disability" based on a letter that "merely state[d] that [the claimant was] totally disabled secondary to diabetes [and] hypertension" but did not include any "clinical data") (quotation marks and citation omitted); *Parker v. Sun Life Assurance Co. of Can.*, No. 16-2554-JAR, 2017 WL 4222987, at *10 (D. Kan. Sept. 22, 2017) (finding no error where plan denied benefits because claimant failed to provide "objective evidence regarding the restrictions and limitations that prevent[ed]" him from performing his job).

Similarly, Cruz emphasizes that as of May 12, 2016, he was still taking Seroquel. (Doc. 125 at 16–17 (citing AR at 259).) Notwithstanding the fact that he took Seroquel "rarely" (*see* AR at 261), that he took it at all does not automatically correlate to the presence of limitations that rendered him unable to perform his job. Throughout his submissions, Cruz does little more than point to his diagnoses and medications to prove disability. It is not enough.

### 3.     Cruz fails to show that Dr. Sanders's report is unreliable.

Next, Cruz argues that the Court should not rely on Dr. Sanders's report, because it "only mentions *physician*" and not surgeon. (*See* Doc. 138 at 4.) Again, this is not accurate. In an addendum to his report, Dr. Sanders opines that progress notes from March and April 2016 show Cruz's efforts to maintain sobriety and manage his anxiety "would have significantly functionally impaired him from work in a high stress position as a practicing physician." (*See* AR at 445.) In the first paragraph of his original summary, however, Dr. Sanders notes that Cruz is a General Surgeon. (*See* AR at 393.) Regardless, it does not appear that Dr. Sanders relied on *any* description of Cruz's duties, as the list of "Data Reviewed" does not include the DOT description for Surgeon, nor the "Non Management Job Description" for "Physician, Community Based" that Lovelace provided, both of which are included in the record. (*See* AR at 191, 375, 392–93.) More likely, Dr. Sanders relied on his own knowledge as a medical doctor[9] to conclude that "[b]y the end of April [Cruz] appears to have been significantly improved and by May 1, 2016 there is no indication that he could not have returned to work on a full time basis without restriction." (*Id.* at 445.)

Critically, even if the Court found that Dr. Sanders based his opinion only on the position of physician, Cruz fails to identify any material differences between the duties of surgeon and physician (using either the Lovelace job description or the DOT description for Physician, General Practice[10]) that would make Dr. Sanders's opinion unreliable. (*See* Doc. 138.) Nor does the Court

---

[9] Dr. Sanders has an M.D. and is board certified in psychiatry. (*See* AR at 396, 400.)

[10] Physician, General Practice is listed as DOT Code 070.101-022. *See Code 070.101-022* (*General Practitioner*), DOT, https://occupationalinfo.org/07/070101022.html (last revised May 26, 2003). The duties include:

> Diagnoses and treats variety of diseases and injuries in general practice: Examines patients, using medical instruments and equipment. Orders or executes various tests, analyses, and diagnostic images to provide information on patient's condition. Analyzes reports and findings of tests and of examination, and diagnoses condition. Administers or prescribes treatments and drugs. Inoculates and vaccinates patients to immunize patients from communicable diseases. Advises patients concerning diet, hygiene, and methods for prevention of disease. Provides prenatal care to pregnant

15

find that the duties of surgeon and physician are so different that Cruz would be able to work as a physician (per Dr. Sanders's conclusion) but not as a surgeon. Surgeons examine patients, review reports, examine equipment, and perform operations. (AR at 375.) *See also Code 070.101-094* (*Surgeon*). Physicians examine patients, order and execute tests, analyze reports, administer and prescribe treatments, and perform minor surgeries. Cruz fails to develop any argument to show that his limitations and restrictions, as established in the record, make him incapable of performing the duties of either occupation. (*See* Docs. 125; 138.)

Finally, Cruz criticizes Dr. Sanders for failing to discuss or identify bipolar disorder. (*See* Doc. 138 at 7, 10.) Again, this argument is a non-starter, as Cruz fails to identify any related restrictions or limitations that would preclude him from performing his duties as a surgeon.

### 4.    Cruz's claim is not supported by a preponderance of the evidence.

Reliance found that Cruz was eligible for Short Term Disability benefits from February 8, 2016, through May 1, 2016. (*See* AR at 76, 156.) To be eligible for LTD benefits, Cruz must show that he was Totally Disabled through May 8, 2016, and thereafter. (*See id.* at 11.) Cruz argues that records after May 1, 2016, "do not show that the condition [Cruz] was suffering from when he was totally disabled suddenly disappeared or that he was cured." (Doc. 138 at 9.) There are two problems with this position. First, Cruz fails to show that the standard for an award of Short Term Disability benefits has any bearing on entitlement to an award of LTD benefits. *See, e.g.*, *Winfrey v. Harford Life & Accident Ins. Co.*, 127 F. Supp. 3d 1153, 1164 (D. Kan. 2015) ("The approval

---

> women, delivers babies, and provides postnatal care to mother and infant . . . . Reports births, deaths, and outbreak of contagious diseases to governmental authorities. Refers patients to medical specialist or other practitioner for specialized treatment. Performs minor surgery. May make house and emergency calls to attend to patients unable to visit office or clinic. May conduct physical examinations to provide information needed for admission to school, consideration for jobs, or eligibility for insurance coverage. . . .

*Id.*

of short term disability benefits does not guarantee or otherwise indicate that a claimant is entitled to an award of long-term disability benefits."). Second, the burden is not on Reliance to show that any disabling condition "suddenly disappeared" before the end of the Elimination Period. Rather, it is Cruz's burden to show by a preponderance of the evidence that he was disabled through the end of the Elimination Period (May 8, 2016) and thereafter. Cruz simply fails to meet this burden.

The record shows that from approximately February 2016 through at least the end of the Elimination Period, Cruz was engaged in a 12-step program through Alcoholics Anonymous and participated in group therapy and individual counseling. (AR at 291–315.) Ms. D'Coda said that he was "making satisfactory progress toward achievement of [his] treatment goals" and there was no "indication of behavioral or chemical relapse." (*Id.* at 295–96, 299–300, 303–04, 307–08, 311–12.) He indicated to providers in April and May that he had stopped taking Zoloft and rarely used Seroquel and was feeling okay. (*See id.* at 259–61.) And in March 2016, Dr. Vigil, Cruz's attending physician, opined that he expected Cruz to "achieve maximum medical improvement" in less than four weeks. (*Id.* at 177.) Dr. Vigil submitted this opinion on a Reliance "Physician's Statement" form for a "Disability Claim." (*Id.* at 176.) In a section related to "mental/nervous" limitations, Dr. Vigil opined that Cruz was *not limited* in three of the four mental abilities. (*Id.* at 177.) In only one mental ability did Dr. Vigil opine that Cruz was moderately—not extremely—limited: his ability to perform complex and varied tasks. (*See id.*) This opinion simply does not support a finding that Cruz remained unable to perform the material duties of his position by May 8, 2016. Finally, the Court finds that Dr. Sanders's conclusion that Cruz was "significantly improved" by the end of April and could return to work full time without restrictions as of May 1, 2016, is reliable. (*See id.* at 445.) On that date, Cruz was "more stable[, m]edications had been weaned[, h]e had ongoing support and was still sober and being monitored by the state licensing agency."

17

(*Id.*) After reviewing the record *de novo*, the Court finds that Cruz fails to show that he was Totally Disabled under the Policy.

### D. Conclusion

Having performed a *de novo* review of the entire administrative record, the Court finds that Reliance's decision was sound. Cruz fails to show, by a preponderance of the evidence, that his condition rendered him Totally Disabled under the Policy. Consequently, the Court finds he is not entitled to an award of LTD benefits, and Reliance's decision was correct.

**THEREFORE,**

**IT IS ORDERED** that Cruz's Motion for Summary Judgment and Opening Brief on ERISA Claim (Doc. 125) is **DENIED**, and Reliance's administrative decision denying LTD benefits is **AFFIRMED**;

**IT IS FURTHER ORDERED** that this action is **DISMISSED with prejudice**.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE